**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
JENNIFER DOYLE,

                *Plaintiff,*

                *v.*

TEP EVENTS INTERNATIONAL, LTD. and TEP EVENTS INTERNATIONAL INC.,

                *Defendant.*
-----------------------------------------------------------------------X

**16 CV 0856**

**COMPLAINT**

Plaintiff Jennifer Doyle, by her counsel, The Harman Firm, LLP, alleges against Defendant TEP Events International, Ltd. and TEP Events International Inc. as follows:

PRELIMINARY STATEMENT

1. In this employment discrimination action, Plaintiff Jennifer Doyle ("Plaintiff" or "Ms. Doyle") seeks damages and costs against Defendant TEP Events International, Ltd. and TEP Events International Inc. (collectively "TEP" or "Defendants"), for discriminating against Plaintiff based on her gender and pregnancy, and ultimately terminating her employment because of it. Defendants' conduct violates the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101-131 ("NYCHRL").

JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over Plaintiff's claims, as the matter in controversy exceeds $75,000 and is between citizens of different states:

    (i) Plaintiff is a citizen of the State of New York;

(ii) Defendant TEP Events International Ltd. is a citizen of a foreign state as, upon information and belief, it is incorporated in and its primary place of business is in the United Kingdom; and

(iii) Defendant TEP Events International Inc. is a foreign citizen, as, upon information and belief, it is incorporated in Delaware and its primary place of business is in the United Kingdom.

3. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York because a substantial part of the events giving rise to the claim occurred within this District.

## TRIAL BY JURY

4. Plaintiff respectfully requests a trial before a jury.

## PARTIES

5. Plaintiff Jennifer Doyle was and is an individual, residing in the State of New York in New York County.

6. Upon information and belief, Defendant TEP Events International, Ltd. is a business corporation organized under the laws of the United Kingdom with its principal place of business at Anchorage Court, Caspian Road, Altrincham, WA145HH, Trafford, United Kingdom.

7. Upon information and belief, TEP Events International Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at Anchorage Court, Caspian Road, Altrincham, WA145HH, Trafford, United Kingdom.

8. Upon information and belief, Defendant TEP Events International, Ltd. controls TEP Events International Inc., using TEP Events International, Inc. solely to market its products in North America. TEP Events International, Ltd. and TEP Events International Inc. for all intents and purposes are the same company: they are made up of the same executives who make strategic business decisions regarding their offices in Europe, Salt Lake City, and New York from their principal place of business in the United Kingdom.

## FACTUAL ALLEGATIONS

9. In and around February 2013, Plaintiff Jennifer Doyle was recruited by Erica Hanke for a position with Defendants.

10. Ms. Doyle had several interviews with Defendants' executives, including Paul Beck, TEP Group Chief Executive Officer.

11. On or about March 22, 2013, Defendants hired Ms. Doyle as a Business Development Manager.

12. Ms. Doyle received a salary, commission based on total sales, and a performance bonus.

13. On or about April 6, 2013, Plaintiff Jennifer Doyle began her employment with Defendants as a Business Development Manager.

14. Ms. Doyle was about eight (8) weeks pregnant at the time.

15. On or about April 8, 2013, Defendant sent Ms. Doyle to the U.K. for new hire training.

16. Once in the U.K., Ms. Doyle received and signed her offer letter of employment with Defendants.

17. Immediately, Ms. Doyle realized that Defendants' workplace was sexually charged. Among things, management condoned sexually offensive language and visual displays. Defendants also discriminated against women and specifically pregnant women or women who intended to become pregnant.

18. TEP's Chief Executive Officer, Paul Beck, referred to Ms. Doyle and another female employee, the two oldest women in the group, as the "two old birds."

19. The next day, Mr. Beck told Ms. Doyle that the night before he had found a male employee naked and passed out on a hotel bed with his "hands over his cock."

20. Later that week, Yvonne Donevan, Defendants' employee, foreshadowed Ms. Doyle's future discrimination, telling Ms. Doyle not to disclose to Mr. Beck any intention to have children because he viewed pregnant salespersons as an impediment to TEP's sales.

21. Later that evening, Mr. Beck had a "men only" event, staying at a restaurant with the male employees and after dismissing all of the female employees.

22. In and around the week of April 15, Ms. Doyle began her first week working at Defendants' New York City office.

23. In and around that week, Mr. Beck recommended that the female employees wear short skirts when promoting TEP products at presentations.

24. Mr. Beck also referred to a female TEP employee in a group email to the staff as the "slim pretty girl."

25. Mr. Beck decorated his office with depictions of naked women.

26. Mr. Beck continued to hold "men only" events, which prevented Ms. Doyle and other female employees from advancing within TEP.

27. On the morning April 23, 2013, Ms. Doyle discovered she had miscarried.

28. Ms. Doyle immediately called TEP's Vice President of Sales, Chuck Levitan, to request medical leave for an emergency medical procedure that day.

29. After her procedure, Ms. Doyle returned to the office to pick up her laptop so that she could work while on leave. Upon entering the building, Defendants' Sales Director, Mark Cramb, saw Ms. Doyle visibly upset and asked her what was wrong. Ms. Doyle, overwhelmed with emotion, told Mr. Cramb she had miscarried.

30. Shortly after and while still on leave, Ms. Doyle learned that Mr. Beck was upset that she had "hid her pregnancy" from him at the time of application and hire.

31. Ms. Doyle immediately returned to work out of fear of losing her job.

32. Upon her return, Mr. Cramb told her that Mr. Beck was angry at Ms. Doyle for being untruthful by not disclosing her pregnancy at the time she was hired.

33. Ms. Doyle asked Mr. Levitan for advice, anticipating a meeting with Mr. Beck. She asked whether Mr. Levitan thought Mr. Beck would have hired her had he known that she was pregnant. Mr. Levitan acquiesced, responding, "I cannot comment on that."

34. On or about the next day, Mr. Beck indeed met with Ms. Doyle, during which he curtly asked her if she was committed to her job at TEP, questioning her loyalty in light of her pregnancy and miscarriage.

35. In and around the week of May 13, 2013, Mr. Beck scheduled individual meetings with each TEP staff member to discuss his or her progress.

36. All that day, Mr. Beck refused to make eye contact with Ms. Doyle or speak to her.

37. When it was Ms. Doyle's turn to meet with Mr. Beck, he abruptly left the office, refusing to give Ms. Doyle career-advancing feedback.

38. Later that week, Mr. Levitan told Ms. Doyle that Mr. Beck was very upset with her performance. Ms. Doyle was blindsided by the remark because the last weekly report showed that Ms. Doyle had the second highest activity on her team.

39. Upon sharing this information with Mr. Levitan, he told Ms. Doyle not to protest, as Mr. Beck had already made up his mind about her and pointing out that Mr. Beck's conclusion was based on incorrect data would only make things worse.

40. Undeterred, Ms. Doyle, emailed Mr. Beck, Mr. Levitan, and TEP's Co-Owner, James Lawrence the statistics from the weekly report, which showed her high performance.

41. Ms. Doyle did not receive a response to that email.

42. In and around the week of June 24, 2013, Mr. Lawrence retaliated against Ms. Doyle for her email by gratuitously insulting her. He criticized her and told her that if he were the client he would not buy from her.

43. Contrary to Mr. Lawrence's meritless criticism, on or about July 10, 2013, TEP's Group Chief Financial Officer, Paul Cunniff, told Ms. Doyle that he was impressed with her product knowledge and told her to keep up the good work.

44. By September 11, 2013, the TEP employees were still organizing "men only events.

45. In and around September 2013, despite Ms. Doyle being regularly ranked as having the highest pipeline activity in her department, TEP took away a lead from her and gave it to a male employee, costing Ms. Doyle an opportunity for higher earnings. TEP never provided Ms. Doyle with a reason for taking her lead.

46. Shortly thereafter, Ms. Doyle complained to Mr. Levitan of gender discrimination, citing TEP's lack of attention and support in providing her with leads, and

denying her leads that she independently generated. Mr. Levitan did not attempt to address the issues that Ms. Doyle had raised.

47. On or about October 10, 2013, Ms. Doyle complained to Mr. Beck of gender discrimination. She told him that she felt that the office was a "boy's club" where male employees were favored over female employees. She also told Mr. Beck that she believed the "men only" events were demoralizing to TEP's female employees, who felt disadvantaged and excluded from carrier opportunities.

48. Defending himself against Ms. Doyle's accusations, Mr. Beck told Ms. Doyle that he was promoting another female employee, Bonnie Bruderer. However, again showing his animus against women, he also told Ms. Doyle he was promoting Ms. Bruderer because she was "single," "did not have a family," and would help TEP "hire a younger workforce."

49. Upon information and belief, Ms. Doyle and Ms. Bruderer were the only two female management level employees at that time.

50. During that conversation, Mr. Beck also called Ms. Doyle the "mother hen" at TEP in reference to her age and gender.

51. On November 11, 2013, less than one month after Ms. Doyle complained of gender discrimination, TEP abruptly terminated Ms. Doyle's employment.

52. TEP unlawfully terminated Ms. Doyle because of its animus towards women, and for her complaints of gender discrimination.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Violation of the NYCHRL for Unlawful Termination Based on Gender**

53. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 52 with the same force as though separately alleged herein.

54. NYCHRL prohibits an employer from discriminating against an employee because of their gender.

55. Defendants violated NYCHRL by terminating Ms. Doyle based on her gender.

56. As a direct and proximate consequence of Defendants' illegal discrimination, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to emotional distress and suffering, all in amounts to be determined at trial.

57. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

### SECOND CAUSE OF ACTION
**Violation of the NYCHRL for Creating a Hostile Work Environment Based on Sex**

58. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 57 with the same force as though separately alleged herein.

59. The NYCHRL prohibits employers from discrimination against employees based on their gender.

60. Defendants violated the NYCHRL by discriminating against Ms. Doyle based on her gender by subjecting her to a hostile work environment based on sex.

61. As a direct and proximate consequence of Defendants' illegal discrimination, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to emotional distress and suffering, all in amounts to be determined at trial.

62. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

**THIRD CAUSE OF ACTION**
**Violation of the NYCHRL for Retaliating Against Protected Activity**

63. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 62 with the same force as though separately alleged herein.

64. The NYCHRL prohibits employers from retaliating against employees for complaining of protected activity.

65. Defendants violated the NYCHRL by terminating Plaintiff for complaining of gender discrimination.

66. As a direct and proximate consequence of Defendants' illegal retaliation, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to emotional distress and suffering, all in amounts to be determined at trial.

67. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

## Request for Relief

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first claim, actual damages to be determined at trial, but in no event less than $500,000;

B. For the second claim, actual damages to be determined at trial, but in no event less than $500,000;

C. For the third claim, actual damages to be determined at trial, but in no event less than $500,000;

D. An award of compensatory, liquidated, and punitive damages;

E. Pre-judgment and post-judgment interest;

F. Attorneys' fees and costs; and

G. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 3, 2016

By: *[signature]*
Walker G. Harman, Jr. [WH-8044]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com

*Attorneys for Plaintiff*