**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
JENNIFER DOYLE,

                  *Plaintiff*,                                   **16 CV 0856 (AKH)**

                  *v.*

TEP EVENTS INTERNATIONAL, LTD., TEP EVENTS       **FIRST AMENDED**
INTERNATIONAL, INC. *a/k/a* DUUZRA SOFTWARE       **COMPLAINT**
INTERNATIONAL LIMITED, *and* PAUL BECK,
*individually*,

                  *Defendants*.
------------------------------------------------------------------X

      Plaintiff Jennifer Doyle ("Plaintiff" or "Ms. Doyle"), by her counsel, The Harman Firm, LLP, alleges against Defendants TEP Events International, Ltd., TEP Events International, Inc. a/k/a Duuzra Software International Limited (hereinafter corporate defendants are collectively referred to as "TEP"), and Paul Beck (hereinafter all defendants are collectively referred to as "Defendants") as follows.

PRELIMINARY STATEMENT

      1.      In this employment discrimination action, Ms. Doyle seeks damages and costs against Defendants for subjecting her to a hostile work environment based on gender and pregnancy, discriminating against her based on her gender and pregnancy, and ultimately terminating her employment in retaliation for complaining about such discrimination. Defendants' conduct violates the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-131 ("NYCHRL").

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. §1332, this Court has jurisdiction over Plaintiff's claims, as the matter in controversy exceeds $75,000 and is between citizens of different states:

  (i) Plaintiff is a citizen of the State of New York;

  (ii) Defendant TEP Events International Ltd. is a citizen of a foreign nation as, upon information and belief, it is incorporated in and its primary place of business is in the United Kingdom; and

  (iii) Defendant TEP Events International Inc. a/k/a Duuzra Software International Limited is a foreign citizen, as, upon information and belief, it is incorporated in Delaware and its primary place of business is in the United Kingdom.

  (iv) Defendant Paul Beck is a foreign citizen, as, upon information belief, he is an individual domiciled in the United Kingdom.

3. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York because a substantial part of the events giving rise to the claim occurred within this District.

## TRIAL BY JURY

4. Plaintiff respectfully requests a trial before a jury.

## PARTIES

5. Plaintiff Jennifer Doyle was and is an individual, residing in the State of New York in New York County.

6. Upon information and belief, Defendant TEP Events International, Ltd. is a business organized under the laws of the United Kingdom with its principal place of business at Anchorage Court, Caspian Road, Altrincham, WA145HH, Trafford, United Kingdom.

7. Upon information and belief, Defendant TEP Events International, Ltd. controls TEP Events International, Inc., using TEP Events International, Inc. a/k/a Duuzra Software International Limited solely to market its products in North America. TEP Events International, Ltd. and TEP Events International, Inc. for all intents and purposes are the same company: they are made up of the same executives who make strategic business decisions regarding their offices in Europe and the United States from their principal place of business in the United Kingdom.

8. Upon information and belief, TEP Events International, Inc. a/k/a Duuzra Software International Limited is a business organized under the laws of the State of Delaware with its principal place of business at Anchorage Court, Caspian Road, Altrincham, WA 145HH, Trafford, United Kingdom. As of February 26, 2016, Duuzra is a business name reservation in the State of Utah with 4535 S 2300 E STE B, Holladay, UT 84117 as the registered agent address and Mateo Munoz as the registered agent.

9. Upon information and belief, Defendant Paul Beck is an individual residing and domiciled in the United Kingdom.

FACTUAL ALLEGATIONS

10. In and around February 2013, Plaintiff Jennifer Doyle was recruited by Erica Hanke, Vice President and Career Coach of Cutting Edge, an executive search firm specializing in senior level roles, for a position with TEP.

11. Prior to her hire, Ms. Doyle had several interviews with TEP's executives, including Defendant Paul Beck, TEP's Chief Executive Officer.

3

12. On or about March 22, 2013, Defendants hired Ms. Doyle as a Business Development Manager. On April 4, 2013, Ms. Doyle received her offer letter.

13. For her compensation with TEP, Ms. Doyle received a salary, commissions based on total sales, and a performance bonus.

14. On or about April 6, 2013, Plaintiff Jennifer Doyle began her employment with Defendants.

15. Ms. Doyle was about eight (8) weeks pregnant at the time.

16. On or about April 6, 2013, TEP flew Ms. Doyle to the U.K. for new hire training, which began on April 8, 2013.

17. Once in the U.K., Ms. Doyle signed her offer letter of employment with TEP.

18. Among other offensive statements, during Ms. Doyle's first meeting with Mr. Beck as an employee of TEP, he referred to Ms. Doyle and another female employee, the two oldest women in the group, as the "two old birds."

19. Shortly after, Mr. Beck told Ms. Doyle that the night before he had found a male employee naked and passed out on a bed with his "hands over his cock."

20. Later that week, Yvonne Donevan, TEP's employee, foreshadowed Ms. Doyle's future discrimination, telling Ms. Doyle not to disclose to Mr. Beck any intention to have children because he viewed pregnant salespersons as an impediment to TEP's sales.

21. Later that evening, Mr. Beck had a "men only" event, staying at a restaurant with only the male employees after dismissing all of the female employees.

22. In and around the week of April 15, 2013, Ms. Doyle began working at TEP's New York City office.

23. TEP's New York City workplace was sexually charged: Defendants displayed sexually offensive images; Defendants condoned sexually offensive language; Defendants fostered a work environment that encouraged sexual relationships between female employees with male supervisors, communicating that the way for women to get ahead in the workplace was by engaging in sexual conduct and that sexual solicitations were a prerequisite to their fair treatment; and Defendants were antagonistic toward female employees having children.

24. Mr. Beck covered his office with images of naked women.

25. Mr. Beck referred to a female TEP employee in a group email to the staff as the "slim pretty girl."

26. Mr. Beck regularly held "men only" events, which prevented Ms. Doyle and other female employees from advancing within TEP.

27. On the morning of April 23, 2013, Ms. Doyle discovered she had miscarried.

28. Ms. Doyle immediately called TEP's Vice President of Sales, Chuck Levitan, to request medical leave for an emergency medical procedure the following day, April 24.

29. Ms. Doyle returned to the office to pick up her laptop so that she could work while out of the office. Upon entering the building, TEP's Sales Director, Mark Cramb, saw Ms. Doyle visibly upset and asked her what was wrong. Ms. Doyle, overwhelmed with emotion, told Mr. Cramb she had miscarried.

30. On April 24, 2013, while traveling home from the hospital after the procedure, Ms. Doyle learned that Mr. Beck was upset that she "hid her pregnancy" from him at the time of application and hire.

31. On April 25, 2013, Ms. Doyle returned to work out of fear of losing her job.

32. Upon her return, Mr. Cramb told her that Mr. Beck was angry at Ms. Doyle for being untruthful by not disclosing her pregnancy at the time she was hired.

33. Ms. Doyle asked Mr. Levitan for advice, anticipating a meeting with Mr. Beck. She asked whether Mr. Levitan thought Mr. Beck would have hired her had he known that she was pregnant.

34. Mr. Levitan responded: "I cannot comment on that."

35. On or about the next day, Mr. Beck met with Ms. Doyle telephonically; during the call he curtly asked her if she was "committed to her job at TEP" in light of her pregnancy and miscarriage.

36. In and around the week of May 13, 2013, Mr. Beck scheduled individual meetings with each TEP staff member to discuss his or her progress.

37. In and around the week of May 13, 2013, Mr. Beck refused to make eye contact with Ms. Doyle or speak to her.

38. When it was Ms. Doyle's turn to meet with Mr. Beck, he abruptly left the office, refusing to give Ms. Doyle career-advancing feedback.

39. Later that day, Mr. Levitan told Ms. Doyle that Mr. Beck was very upset with her performance. Ms. Doyle was blindsided by the remark because the last weekly report showed that Ms. Doyle had the second highest activity on her team.

40. Mr. Levitan told Ms. Doyle not to protest Mr. Beck's assessment of her performance, as Mr. Beck had already made up his mind about her and pointing out that Mr. Beck's conclusion was based on incorrect data would only make things worse.

41. Undeterred, Ms. Doyle, emailed Mr. Beck, Mr. Levitan, and TEP's Co-Owner, James Lawrence the statistics from the weekly report, which showed her high performance.

42. Ms. Doyle did not receive a response to that email.

43. In and around the week of June 24, 2013, Mr. Lawrence retaliated against Ms. Doyle for her email by gratuitously insulting her. He criticized her later that day, telling her that if he were the client he would not buy from her.

44. Contrary to Mr. Lawrence's meritless criticism, on or about July 10, 2013, TEP's Group Chief Financial Officer, Paul Cunniff, told Ms. Doyle that he was impressed with her product knowledge and told her to keep up the good work.

45. In and around that week, Mr. Beck recommended that the female employees wear short skirts when promoting TEP events.

46. By September 11, 2013, TEP was still holding "men only events."

47. In and around September 2013, despite Ms. Doyle being regularly ranked as having the highest pipeline activity in her department, TEP took away a lead from her and gave it to a male employee, costing Ms. Doyle an opportunity for higher earnings. TEP never provided Ms. Doyle with a reason for taking her lead.

48. Shortly thereafter, Ms. Doyle complained to Mr. Levitan of gender discrimination, citing TEP's lack of attention and support in providing her with leads and denying her leads that she independently generated. Defendants failed to address the issues that Ms. Doyle raised.

49. On or about October 8, 2013, in reference to Ms. Doyle's report about a vender possibly pulling out of a deal with a competitor, Mr. Beck moved closer to her, coming very close to her face, and said, "Do you know what we call that in the U.K.? A cock tease."

50. Ms. Doyle, distraught and offended by Mr. Beck's comment, complained about Mr. Beck's comment to Bonnie Bruderer, TEP's Business Development Director, who responded that the comment was "hilarious."

51. On or about October 10, 2013, Ms. Doyle complained to Mr. Beck of gender discrimination. She told him that she felt that the office was a "boys' club" where male employees were favored over female employees. She also told Mr. Beck that she believed the "men only" events were demoralizing to TEP's female employees, who felt disadvantaged and excluded from career opportunities.

52. Defending himself against Ms. Doyle's accusations, Mr. Beck told Ms. Doyle that he was promoting another female employee, Bonnie Bruderer. However, again showing his animus against women, he also told Ms. Doyle he was promoting Ms. Bruderer because she was "single," "did not have a family," and would help TEP "hire a younger workforce."

53. Additionally, it was well known that Ms. Bruderer was having an affair with TEP's Chief Financial Officer, making clear the fact that female employees would need to have sex with the male executives if they wanted to advance at TEP.

54. Upon information and belief, Ms. Doyle and Ms. Bruderer were the only two female management level employees at that time in TEP's New York City office.

55. During that conversation, Mr. Beck also called Ms. Doyle the "mother hen" at TEP in reference to her age and gender.

56. On November 11, 2013, less than one month after Ms. Doyle complained of gender discrimination and after numerous complaints to her superiors regarding TEP's discriminatory conduct, TEP abruptly terminated Ms. Doyle's employment.

57. TEP unlawfully terminated Ms. Doyle because of its animus against women, and for her complaints of gender discrimination.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Violation of the NYCHRL by Unlawful Termination Based on Gender and Pregnancy**

58. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 57 with the same force as though separately alleged herein.

59. NYCHRL prohibits an employer from discriminating against an employee because of their gender and/or pregnancy.

60. Defendants violated NYCHRL by terminating Ms. Doyle based on her gender and pregnancy.

61. As a direct and proximate consequence of Defendants' illegal discrimination, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to emotional distress and suffering, all in amounts to be determined at trial.

62. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

### SECOND CAUSE OF ACTION
**Violation of the NYCHRL by Creating a Hostile Work Environment Based on Sex and Pregnancy**

63. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 62 with the same force as though separately alleged herein.

64. The NYCHRL prohibits employers from discriminating against employees based on their gender and/or pregnancy.

65. Defendants violated the NYCHRL by discriminating against Ms. Doyle based on her gender by subjecting her to a hostile work environment based on sex.

66. As a direct and proximate consequence of Defendants' illegal discrimination, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to emotional distress and suffering, all in amounts to be determined at trial.

67. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

### THIRD CAUSE OF ACTION
### Violation of the NYCHRL for Retaliating Against Protected Activity

68. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 67 with the same force as though separately alleged herein.

69. The NYCHRL prohibits employers from retaliating against employees for complaining of discriminatory conduct protected by the NYCHRL.

70. Plaintiff repeatedly complained to Defendants about gender and pregnancy discrimination at TEP.

71. Defendants violated the NYCHRL by terminating Plaintiff for complaining of gender and/or pregnancy discrimination.

72. As a direct and proximate consequence of Defendants' illegal retaliation, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to emotional distress and suffering, all in amounts to be determined at trial.

73. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

## Request for Relief

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.   For the first claim, actual damages to be determined at trial, but in no event less than $500,000;

B.   For the second claim, actual damages to be determined at trial, but in no event less than $500,000;

C.   For the third claim, actual damages to be determined at trial, but in no event less than $500,000;

D.   An award of compensatory, liquidated, and punitive damages;

E.   Pre-judgment and post-judgment interest;

F.   Attorneys' fees and costs; and

G.   Such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         May 31, 2016

By:   s/ Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
T: (212) 425-2600
F: (212) 202-3926
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*