UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JENNIFER DOYLE,

                *Plaintiff,*

     v.

TEP EVENTS INTERNATIONAL, LTD., TEP  EVENTS
INTERNATIONAL, INC. a/k/a DUUZRA SOFTWARE
INTERNATIONAL LIMITED, *and* PAUL BECK,
*individually,*

                *Defendants.*

ECF CASE

16 CV 0856 (AKH)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS TEP EVENTS INTERNATIONAL, LTD. AND TEP EVENTS INTERNATIONAL, INC.'s MOTION TO DISMISS THE FIRST AMENDED COMPLAINT WITH PREJUDICE

*Of Counsel and On the Brief*
David S. Hong

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................iii

PRELIMINARY STATEMENT.............................................................................1

FIRST AMENDED COMPLAINT ALLEGATIONS.....................................................4

ARGUMENT.................................................................................................6

POINT I

DOYLE'S UNLAWFUL TERMINATION AND HOSTILE WORK ENVIRONMENT CLAIMS
BASED ON PREGNANCY SHOULD BE DISMISSED BECAUSE PREGNANCY
DISCRIMINATION WAS IMPOSSIBLE.................................................................7

POINT II

DOYLE'S NYCHRL CLAIM FOR UNLAWFUL TERMINATION BASED ON GENDER
AND PREGNANCY MUST BE DISMISSED..............................................................8

POINT III

DOYLE'S NYCHRL HOSTILE WORK ENVIRONMENT CLAIM BASED ON GENDER
AND PREGNANCY MUST BE DISMISSED..............................................................11

POINT IV

DOYLE'S RETALIATION CLAIM IS BOTH REDUNDANT AND MERITLESS AND
THEREFORE SHOULD BE DISMISSED..................................................................15

*Doyle does not sufficiently allege participation in a protected* activity...................................15

*Doyle cannot show a causal connection to her termination
and her so-called "protected activity"*..................................................................17

CONCLUSION...............................................................................................19

# TABLE OF AUTHORITIES

**Cases**           **Page**

*Anderson v. Davis Polk & Wardwell LLP,*
850 F. Supp.2d 392 (S.D.N.Y. 2012)................................................................9, 12

*Ardigo v. J. Christopher Capital, LLC,*
No. 12 Civ. 3627, 2013 WL 1195117 (S.D.N.Y. Mar. 25, 2013)..........................9

*Ashcroft v. Iqbal,*
556 U.S. 662, 680 (2009)...............................................................................7

*Aspilaire v. Wyeth Pharms., Inc.,*
612 F. Supp.2d 289 (S.D.N.Y. 2009).............................................................16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 555 (2007).................................................................................6

*Bermudez v. City of N.Y.,*
783 F. Supp.2d 560 (S.D.N.Y. 2011).............................10, 11, 12, 13, 15

*Carter v. Verizon,*
No. 13 Civ. 7579, 2015 WL 247344 (S.D.N.Y. Jan. 20, 2015).........................7

*Chin v. N.Y. City Hous. Auth.,*
2011 NY Slip Op 31900(U) (N.Y. Sup. Ct. N.Y. Cnty. July 7, 2011)...................13

*Chow v. Stride Rite Corp.,*
No. 05 Civ. 02417, 2009 WL 196030 (S.D.N.Y. Jan. 27, 2009)..........................18

*Constantine v. Kay,*
6 Misc.3d 927 (N.Y. Sup. Ct. Kings Cnty. 2004)........................12, 13, 16, 18-19

*DeFrancesco v. Metro N. R.R.,*
2012 NY Slip Op 31626 (U) (N.Y. Sup. Ct. NY Cnty. June 18, 2012)...................8

*Dunn v. Sederakis,*
No. 11 Civ. 8210, 2015 WL 6681134 (S.D.N.Y. Nov. 2, 2015)..........................16

*EEOC v. Bloomberg, LP,*
967 F. Supp.2d 816 (S.D.N.Y. 2013).............................9, 10, 12, 13, 17, 18

*EEOC v. Port Auth. of N.Y. & N.J.*,
768 F.3d 247 (2d Cir. 2014).................................................................................................7

*Feliciano v. City of N.Y.*,
No. 14 Civ. 6751, 2015 WL 4393163 (S.D.N.Y. July 15, 2015)...................................11, 12

*Forrest v. Jewish Guild for the Blind*,
3 N.Y.3d 295 (2004)..................................................................................................11, 15

*Gorokhovsky v. N.Y. City Hous. Auth.*,
552 F. App'x 100 (2d Cir. 2014).........................................................................................9

*Harbas v. Gilmore*,
193 A.D.2d 553 (1st Dept 1993).......................................................................................10

*Henry v. N.Y. City Health & Hosp. Corp.*,
18 F. Supp.3d 396 (S.D.N.Y. 2014)...................................................................................7

*Johnson v. Morrison & Foerster LLP*,
No. 14 Civ. 428, 2015 WL 845723 (S.D.N.Y. Feb. 26, 2015)......................................7, 10

*Kassman v. KPMG, LLP*,
925 F. Supp.2d 453 (S.D.N.Y. 2013)...............................................................................16

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
496 F.3d 229, 237 (2d Cir. 2007).......................................................................................6

*Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.*,
814 F. Supp.2d 355 (S.D.N.Y 2011).................................................................................18

*Kolenovic v. ABM Indus. Inc.*,
2012 NY Slip Op 31959(U) (N.Y. Sup. Ct. N.Y. Cnty. July 23, 2012)...............................14

*Lambert v. McCann Erickson*,
543 F. Supp.2d 265, 279 (S.D.N.Y. 2008)..........................................................................8

*Magnoni v. Smith & Laquercia*,
F. Supp.2d 497 (S.D.N.Y. 2010).......................................................................................13

*Maldonado v. George Western Bakeries*,
441 F. App'x 808, 809 (2d Cir. 2011)..................................................................................7

*Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.*,
715 F.3d 102 (2d Cir. 2013)..........................................................................................9, 10

*Moccio v. Cornell Univ.*,
889 F. Supp.2d 539 (S.D.N.Y. 2012).........................................................................................12

*Olle v. Columbia Univ.*,
332 F. Supp.2d 599 (S.D.N.Y. 2004)........................................................................................14

*Prince v. Cablevision Sys. Corp.*,
No. 04 Civ. 8151, 2005 WL 1060373 (S.D.N.Y. May 6, 2005)...........................................15

*Sharpe v. MCI Communications Servs. Inc.*,
684 F. Supp.2d 394 (S.D.N.Y. 2010)...................................................................................15, 16

*Sletten v. LiquidHub, Inc.*,
No. 13 Civ. 1146, 2014 WL 338886 (S.D.N.Y. July 11, 2014).....................................6, 7, 9

*Soloviev v. Goldstein*,
104 F. Supp.3d 232 (S.D.N.Y. 2015)........................................................................................10

*Tarascio v. NBC Universal*,
2016 NY Slip Op 30200(U) (N.Y. Sup. Ct. N.Y. Cnty. February 4, 2016)............................16

*Thomas v. Westchester Cnty. Health Care Corp.*,
232 F. Supp.2d 273 (S.D.N.Y. 2009).......................................................................................16

*Williams v. N.Y.C Hous. Auth.*,
61 A.D.3d 62 (1st Dept 2009)...............................................................................................9, 12

*Wilson v. NYP Holdings, Inc.*,
No. 05 Civ 10355, 2009 WL 873206 (S.D.N.Y. March 31, 2009)...................................10, 14

*Woodard v. TWC Media Solutions, Inc.*,
No. 09 Civ. 3000, 2011 WL 70386 (S.D.N.Y. Jan. 4, 2011).....................................................9

**Statutes**

42 U.S.C. § 2000 *et seq*. R. 4:5-8...........................................................................................1

N.Y. Exec. Law § 296 et seq..............................................................................................1-2

Administrative Code of the City of New York § 8-101 *et seq*.................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6).............................................................................1, 6

Defendants TEP Events International, Ltd. and TEP Events International, Inc. (the "TEP Defendants" or "TEP") respectfully submit this memorandum of law in support of their motion to dismiss all claims against for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Preliminary Statement

Plaintiff Jennifer Doyle waited over two years after her employment with TEP concluded to file this diversity action in February 2016, initially against the TEP Defendants for alleged violations of the New York City Human Rights Law, Administrative Code of the City of New York § 8-101 *et seq*. ("NYCHRL") for unlawful termination based on gender, for creating a hostile work environment based on sex and retaliating against protected activity (the "Original Complaint"). After filing the instant action, counsel for Doyle and the TEP Defendants agreed that the time to answer or otherwise respond to the Original Complaint would be extended to June 3, 2016 (*see* Hong Decl., Ex. A). Before the stipulated time to answer or otherwise move expired, counsel for Doyle informed counsel for the TEP Defendants of its intention to file an amended complaint. Rather than answer the complaint and then answer the amended complaint, counsel for the parties consented that Doyle would serve the TEP Defendants with an amended complaint by May 31, 2016 (the "First Amended Complaint[1]") and the TEP Defendants would have until and including June 30, 2016 to answer or otherwise respond to the First Amended Complaint. A request to extend the time within which to respond to the First Amended Complaint to June 30, 2016 was made on consent and sent by facsimile to the Court on behalf of all the parties by Doyle's counsel. *See* Hong Decl., Ex. C.

---

[1] The First Amended Complaint (Hong Decl. Ex. B), among other things, adds Paul Beck as an individual defendant and pregnancy as a basis for alleged unlawful termination and creation of a hostile work environment in the first and second causes of action, respectively.

1

Notably, Doyle did not bring claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* or the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"), in either the Original or the First Amended Complaint, evidently because they are time-barred. Doyle also does not allege that she went to the Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights or any other governmental agency to file a complaint. Instead, she waited over two years after she stopped working for TEP to complain about supposedly serious employment discrimination, benefiting from the NYCHRL's generous statute of limitations friendly to malingering litigants.

An examination of the First Amended Complaint reveals that Doyle has failed to state claims for unlawful termination based on gender and pregnancy, for creating a hostile work environment based on sex and pregnancy and retaliating against protected activity even under the NYCHRL. In the First Amended Complaint, Doyle attempts to cobble together claims of discrimination where none existed. As a threshold matter, Doyle's allegations that the TEP Defendants unlawfully terminated her and created a hostile work environment based in part on pregnancy must fail because Doyle herself pleads that she was pregnant for at most one week of her employment at TEP's New York City location and did not tell anyone at TEP that she was formerly pregnant until after her pregnancy terminated. Accordingly, any discrimination based on Doyle's pregnancy is impossible.

To the extent Doyle relies on gender and sex for her NYCHRL hostile work environment and unlawful termination claims, she falls short here as well. The First Amended Complaint is replete with bald assertions and conclusory allegations that are not dispositive of employment discrimination simply because Doyle labels them instances of "gender

2

discrimination." As to Doyle's unlawful termination claim based on gender and pregnancy, the First Amended Complaint contains no allegations whatsoever in support of Doyle's mistaken notion that the TEP Defendants terminated her because of her gender, none. Any allegations that the TEP Defendants supposedly treated her "less well" than her male counterparts are vague and conclusory, devoid of any specificity. Moreover, Doyle never alleges that the TEP Defendants replaced her with a man but instead, shows that TEP did not only continuously hire women but promoted them. In order to sketch these weak causes of action, Doyle depends on various labels, innuendo and an active imagination, which this Court would have to employ in order to even try to sustain any of her claims since they are woefully deficient.[2] Doyle's desperate distortions of perhaps annoying but clearly harmless comments and actions should not be legitimized.

Doyle's hostile work environment claim based on sex and pregnancy suffers from similar flaws. The First Amended Complaint is devoid of any allegations that describe a hostile work environment based on sex or pregnancy. In addition to Doyle's own allegation that she was not pregnant a week after she started working for TEP in New York City, Doyle offers only ambiguous references to such things as "men only" outings and other vague occurrences without even a modicum of detail to assist anyone to determine that they somehow created a hostile work environment based on sex and pregnancy. Additionally, the First Amended Complaint lacks any allegation that these vague references and occurrences interfered with or inhibited his performance, or altered any conditions of her employment – which is essential to establishing a hostile environment. Even any stray remarks that Doyle may point to in the First Amended

---

[2] The TEP Defendants acknowledge that under New York's liberal pleading rules, the First Amended Complaint's allegations must be accepted at face value as if the facts alleged therein are true. The TEP Defendants denies most of the allegations therein but such denials will not be set forth at this time.

Complaint, even if true, are insufficient as a matter of law to establish a NYCHRL claim of hostile work environment.

With regard to Doyle's retaliation claim, it, along with the previous two claims, should be dismissed. First, it is redundant. The only employer adverse action Doyle alleges is her termination for gender and pregnancy discrimination. Since Doyle already pled a cause of action for unlawful termination based on gender and pregnancy earlier in the First Amended Complaint, this claim should be dismissed as duplicative. Should this Court find that Doyle's retaliation claim is not redundant, it should still be dismissed because she fails to show that she engaged in a protected activity, that the TEP Defendants were aware that she participated in that activity and that a causal connection existed between a protected activity and an adverse action.

None of Doyle's allegations make out a cognizable claim for anything, let alone awards "in no event less than $500,000" for each of Doyle's three causes of action, plus "compensatory, liquidated and punitive damages" which are demanded in the First Amended Complaint's "Wherefore" clause. This action against the TEP Defendants is a money grab, plain and simple, and an unfortunate attempt to shake them down.

### The First Amended Complaint Allegations

Doyle began working at TEP's New York City office in and around the week of April 15, 2013 (First Am. Compl. ¶22). She alleges that

> TEP's New York City workplace was sexually charged:
> Defendants displayed sexually offensive images; Defendants
> condoned sexually offensive language; Defendants fostered a
> work environment that encouraged sexual relationships between
> female employees with male supervisors, communicating that
> the way for women to get ahead in the workplace was by
> engaging in sexual conduct and that sexual solicitations were a
> prerequisite to their fair treatment; and Defendants were

4

antagonistic toward female employees having children."

(Id. at ¶ 23). Beyond this bare, conclusory accusation, Doyle never details how Defendants condoned sexually offensive language, nor names any specific example of any sexual conduct or solicitations, let alone how they were required for fair treatment or for female advancement. Nowhere in the First Amended Complaint does Doyle lay out any sexual *quid pro quo* expectations for her to advance at work. Instead, she offers an office rumor that "[Bonnie] Bruderer was having an affair with TEP's Chief Financial Officer" and then makes the excessively unreasonable and (borderline ridiculous) deduction that Ms. Bruderer's promotion "[made] clear the fact that female employees would need to have sex with the male executives if they wanted to advance at TEP." (Id. at ¶ 52). With regard to sexually offensive images, she vaguely supplements that "Mr. Beck covered his office with images of naked women."[3] (Id. at ¶ 24). Virtually all of the alleged comments made about pregnancy occurred after Doyle miscarried in and around April 23, 2013 (Id. at ¶ 27) and never about Doyle specifically, since she did not tell anyone at TEP she was even pregnant until after the day after she miscarried (Id. at ¶ 29).

Doyle continues her bare, conclusory allegations by claiming that James Lawrence, TEP's co-owner "retaliated against Ms. Doyle for her email [allegedly containing sales activity data favorable to Doyle] by gratuitously insulting her" (Id. at ¶ 43). She also alleges that she complained to Chuck Levitan, TEP's vice president of sales about supposed

---

[3] As with the rest of the First Amended Complaint, even Doyle's attempts at detail are deficient, leaving one to guess whether what supposedly adorned the walls was a Playboy magazine pinup or a lithograph of Botticelli's *The Birth of Venus*.

gender discrimination "citing TEP's lack of attention and support in providing her with leads and

denying her leads that she independently generated. (Id. at ¶ 48). Doyle also alleges that

- "Mr. Beck regularly held "men only" events, which prevented Ms. Doyle and other female employees from advancing within TEP" (Id. at ¶ 26);

- that "[b]y September 11, 2013, TEP was still holding "men only events." (Id. at ¶ 46); and

- "On or about October 10, 2013, Ms. Doyle complained to Mr. Beck of gender discrimination. She told me that she felt that the office was a "boys' club" where male employees were favored over female employees. She also told Mr. Beck that she believed the "men only" events were demoralizing to TEP's female employees, who felt disadvantaged and excluded from career opportunities." (Id. at ¶ 51)

However, nowhere in the First Amended Complaint does Doyle allege that she was treated less

favorably than similarly situated male employees. Nor does Doyle allege anywhere in the First

Amended Complaint that any other female employees were denied promotions; indeed, she

alleges the exact opposite.

### Argument

On a motion to dismiss for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6), the Court must accept all factual allegations in the complaint as true and

draw all reasonable inferences in favor of the plaintiff. *Sletten v. LiquidHub, Inc.*, No. 13 Civ.

1146, 2014 WL 338886, at *8 (S.D.N.Y. July 11, 2014), *citing Kassner v. 2nd Ave. Delicatessen,

Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). Nevertheless, a plaintiff must allege facts sufficient "to

raise a right of relief above the speculative level." *Id. citing Bell Atl.Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (internal quotation marks omitted). A complaint should be dismissed where it

fails to "assert nonconclusory factual matter sufficient to nudge its claims across the line from

conceivable to plausible." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal quotation marks omitted*), quoting Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

Although a plaintiff need not plead specific facts establishing a *prima facie* case of discrimination in order to survive a motion to dismiss, "the claim asserted must still be facially plausible and give fair notice to the defendants of [its] basis." *Sletten*, 2014 WL 338886, at *9 (internal citations and quotations marks omitted). Indeed, "the elements of a *prima facie* case often provide an outline of what is necessary to render a plaintiff's claims for relief plausible." *Carter v. Verizon*, No. 13 Civ. 7579, 2015 WL 247344, at * 15 (S.D.N.Y. Jan. 20, 2015); *see also Henry v. N.Y. City Health & Hosp. Corp.*, 18 F. Supp.3d 396, 404 (S.D.N.Y. 2014). Dismissal is appropriate where the plaintiff fails to allege even the basic elements of a discrimination claim. *Sletten*, 2014 WL 338886, at *9, citing *Maldonado v. George Western Bakeries*, 441 F. App'x 808, 809 (2d Cir. 2011). "Naked assertions of . . .discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." *Johnson v. Morrison & Foerster LLP*, No. 14 Civ. 428, 2015 WL 845723, at * 5 (S.D.N.Y. Feb. 26, 2015) (internal citations and quotation marks omitted).

### POINT I

### DOYLE'S UNLAWFUL TERMINATION AND HOSTILE WORK ENVIRONMENT CLAIMS BASED ON PREGNANCY SHOULD BE DISMISSED BECAUSE PREGANANCY DISCRIMINATION WAS IMPOSSIBLE

To the extent Doyle's wrongful termination and hostile work environment claims are based on pregnancy discrimination, these claims must be dismissed because upon the facts pled in the First Amended Complaint, pregnancy-based discrimination is impossible. Doyle

must satisfy four elements to make out a *prima facie* pregnancy discrimination case under the NYCHRL: (1) she was pregnant; (2) she satisfactorily performed her job duties at TEP; (3) she was discharged; and (4) she was terminated after she became pregnant, and her position was ultimately filled by a non-pregnant employee. *Lambert v. McCann Erickson*, 543 F. Supp.2d 265, 279 (S.D.N.Y. 2008). Doyle began working at TEP's New York City office in and around April 15, 2013 (First Amended Compl. at ¶ 22). She miscarried on April 23, 2013 (Id. at ¶ 27). She did not inform anyone at TEP that she was pregnant until after she miscarried (Id. at ¶¶ 29-30). Nowhere in the First Amended Complaint does Doyle allege that she became pregnant again between April 23, 2013 and November 11, 2013, her last day of work. Doyle never suffered any pregnancy discrimination. *DeFrancesco v. Metro N. R.R.*, 2012 NY Slip Op 31626 (U), *14 (N.Y. Sup. Ct. NY Cnty. June 18, 2012) (dismissing all of plaintiff's claims, including her pregnancy discrimination claims because "[s]ubsequent to [plaintiff's] miscarriage and prior to her termination from employment, plaintiff did not re-conceive. Therefore any pregnancy based discrimination is without factual basis."). Accordingly, all of Doyle's pregnancy based claims are dead on arrival.

## POINT II
## DOYLE'S NYCHRL CLAIM FOR UNLAWFUL TERMINATION BASED ON GENDER AND PREGNANCY MUST BE DISMISSED

Doyle has not stated a claim for unlawful termination based on gender or pregnancy under the NYCHRL because the allegations in the First Amended Complaint fail to show either. As explained earlier, Doyle did not suffer any pregnancy based discrimination because Doyle herself alleges in the First Amended Complaint that not only was she not even pregnant when she was terminated, but also the only pregnancy Doyle shared with anyone at TEP was one she communicated to Mr. Cramb only after she had miscarried (First Amended

8

Comp. at ¶ 29). Therefore, her unlawful termination claim must clearly be dismissed on this basis.

The gender discrimination branch of her unlawful termination claim should also be dismissed. "To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive; 'the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct.'" *Gorokhovsky v. N.Y. City Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014), *quoting Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.*, 715 F.3d 102, 114 (2d Cir. 2013). Even though the standard under the NYCHRL is more lenient than under federal or New York state law, Doyle's burden in pleading her unlawful termination claim based on gender is hardly trivial. *Sletten*, 2014 WL 338886 at * 24. When "the conduct alleged is far from a 'borderline violation' of state law, then the plaintiff has failed to state a claim under the NYCHRL as well." *Id., quoting Woodard v. TWC Media Solutions, Inc.*, No. 09 Civ. 3000, 2011 WL 70386, at *26 (S.D.N.Y. Jan. 4, 2011) (internal quotation marks omitted), aff'd 487 F. App'x 613 (2d Cir. 2012). The Second Circuit has routinely announced that the "NYCHRL is not a 'general civility code.'" *Mihalik*, 715 F.3d at 110, quoting *Williams v. N.Y.C Hous. Auth.*, 61 A.D.3d 62, 79 (1st Dept 2009); *EEOC v. Bloomberg, LP*, 967 F. Supp.2d 816, 836 (S.D.N.Y. 2013); *Ardigo v. J. Christopher Capital, LLC*, No. 12 Civ. 3627, 2013 WL 1195117, at *3 (S.D.N.Y. Mar. 25, 2013); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp.2d 392, 404 (S.D.N.Y. 2012); "The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive. It is not enough that a plaintiff has an overbearing or obnoxious boss. She must show that she has been treated less well at least in part **because** of her gender." *Id.* (emphasis in original) (internal quotation marks omitted). Indeed, even under the NYCHRL, "petty slights or

9

trivial inconveniences" are not actionable. *Mihalik* at 80; *Bloomberg*, 967 F. Supp.2d at 836; *Bermudez v. City of N.Y.*, 783 F. Supp.2d 560, 579 (S.D.N.Y. 2011); *Wilson v. NYP Holdings, Inc.*, No. 05 Civ 10355, 2009 WL 873206, at *13-14 (S.D.N.Y. March 31, 2009).

Doyle has alleged absolutely nothing to casually connect her termination to any gender discriminatory motive, precisely because she cannot. Nowhere does Doyle even plead any allegation suggesting that the TEP Defendants discharged her because of her gender. The conclusory statement that "TEP unlawfully terminated Ms. Doyle because of its animus against women" is acutely deficient to save her unlawful termination claims on a motion to dismiss. *See, e.g., Johnson*, 2015 WL 845723, at *14-16 (dismissing wrongful termination claims where plaintiff did not allege any facts to indicate the true reason for discharge was age, race or sex, instead relied on conclusory assertions); *Soloviev v. Goldstein*, 104 F. Supp.3d 232, 249-250, (S.D.N.Y. 2015) (dismissing Title VII, New York State law and NYCHRL discriminatory discharge claims because plaintiff did not show any connection between his termination and his gender, race or national origin and instead pointed to various ways he believes he was mistreated and argues that his gender, race and national origin must be why); *Harbas v. Gilmore*, 193 A.D.2d 553, 553 (1st Dept 1993) (affirming dismissal of complaint where plaintiff offered "[o]nly speculation and unsupported conclusions in alleging disability discrimination).

Doyle's own factual allegations demonstrate that TEP's hiring and firing practices did not favor men over women. The only other instance in the First Amended Complaint where Doyle references "animus against women" besides her bald, conclusory statement that "TEP unlawfully terminated Ms. Doyle because of its animus against women" comes a few paragraphs earlier where she alleges that Mr. Beck, "showing his animus against women, [] also told Ms. Doyle he was promoting Ms. Bruderer. . . ." (First Amended Compl. at ¶ 52). TEP's allegedly

discriminatory hiring and firing policies evidently did not harm Ms. Doyle since she was hired. Moreover, Ms. Bruderer was hired and later promoted (Id.). Yvonne Donevan, a female, was also a TEP employee (Id. at ¶ 20). And at least one other female received new employee training with Ms. Doyle (Id. at ¶ 18). Without any connection between the decision to discharge Doyle and discriminatory intent, Doyle cannot make out a claim for unlawful termination based on gender or pregnancy, and therefore, the Court should dismiss the First Amended Complaint's first cause of action.

## POINT III
## DOYLE'S NYCHRL HOSTILE WORK ENVIRONMENT CLAIM BASED ON GENDER AND PREGNANCY MUST BE DISMISSED

For similar reasons explained earlier, Doyle's NYCHRL hostile work environment cause of action based on pregnancy and gender also warrants dismissal. Since she was not pregnant for all but one week of her employment at TEP's New York City office and she did not even notify anyone at TEP that she was pregnant until after she miscarried, her hostile work environment claim based on pregnancy is inconceivable.

To state a claim for hostile work environment based on sex under federal and New York state laws, a plaintiff must allege facts showing a workplace permeated with discriminatory intimidation, ridicule and insult, sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment. *Feliciano v. City of N.Y.*, No. 14 Civ. 6751, 2015 WL 4393163, at *13 (S.D.N.Y. July 15, 2015); *Bermudez*, 783 F. Supp. at 578; *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305, 310-311 (2004). "This test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive. As a general rule, incidents must be more

11

than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Feliciano*, 2015 WL 4393163, at *13 (internal citations and quotation marks omitted).

On the other hand, in order to properly plead a NYCHRL hostile work environment claim based on sex, a plaintiff does not need to allege facts showing "severe or pervasive" misconduct but those that show merely that she was treated less favorably than other employees because of her sex. *Id.* at *14; *Bermudez*, 783 F. Supp.2d at 579; *Williams*, 61 A.D.3d at 79. Although courts consider NYCHRL claims using their more lenient standard as to pervasiveness, the rest of the analysis for NYCHRL discrimination claims is the same as it is for federal and state discrimination claims. *Moccio v. Cornell Univ.*, 889 F. Supp.2d 539, 592 (S.D.N.Y. 2012); *Anderson*, 850 F. Supp.2d at 412-413. "Whether an environment is hostile depends on the totality of the circumstances; in determining whether a workplace environment is hostile, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Constantine v. Kay*, 6 Misc.3d 927, 929-930 (N.Y. Sup. Ct. Kings Cnty 2004) (internal citations omitted) (listing the factors courts consider when analyzing NYCHRL hostile work environment claims). Although NYCHRL claims are subject to a more liberal construction than their federal and state cohorts, as discussed earlier, the NYCHRL should not operate as a general civility code. *Feliciano*, 2015 WL 4393163, at *14; *Bloomberg, LP*, 967 F. Supp.2d at 836; *Williams*, 61 A.D.3d at 79. Although a plaintiff need not meet the higher standard required under federal and state law of demonstrating that the discriminatory conduct was "severe and pervasive," the conduct at issue

still must amount to more than "petty slights or trivial inconveniences." *Bloomberg LP*, 967 F. Supp.2d at 836; *Bermudez*, 783 F. Supp.2d at 579.

Further, "to be actionable, the alleged conduct must be both objectively and subjectively offensive, such that a reasonable person would find the behavior hostile or abusive and such that the plaintiff herself, did, in fact perceive it to be so." *Constantine*, 6 Misc.3d at 930 (internal citations omitted). As such, although Doyle may allege that she was offended by some of Mr. Beck's comments, "her own personal feelings are not enough to demonstrate that a hostile work environment was present." *Chin v. N.Y. City Hous. Auth.*, 2011 NY Slip Op 31900U, *30 (N.Y. Sup. Ct. N.Y. Cnty. July 7, 2011).

Even accepting all of the facts alleged in the First Amended Complaint as true and drawing all inferences in Doyle's favor, the alleged conduct fails to meet even the NYCHRL's lower standard for a hostile environment claim, let alone any gender based discrimination claim. For example, a vague allegation that Mr. Beck displayed "images of naked women" (First Amended Compl. at ¶ 24), calling a vendor's possible withdrawal a "cock tease" (*Id.* at ¶ 49), obscure references to "men only" events that Ms. Doyle subjectively felt "prevented [her] and other female employees from advancing within TEP" and that Ms. Doyle "believed . . .were demoralizing to TEP's female employees, who felt disadvantaged from career opportunities" (*Id.* at ¶¶ 26, 46, 51) are the type of comments and conditions that New York courts find as nothing more than "petty slights and trivial inconveniences." *Bermudez*, 783 F. Supp.2d at 604-605 (finding that defendant's statements about women and Hispanics, "while deeply offensive, are 'petty slights and inconveniences' insufficient to sustain a hostile work environment claim" based on gender pursuant to the NYCHRL); *Magnoni v. Smith & Laquercia*, F. Supp.2d 497, 506 (S.D.N.Y. 2010) (defendant's occasionally referring to plaintiff as voluptuous, knocking her

13

knee and telling a crude anecdote from his sex life with another woman did not make out gender based hostile work environment claim under NYCHRL); *Wilson*, 2009 WL 873206, at *13-14 (concluding that statements such as "training females is like training a dog"; "women need to be horsewhipped"; "[y]ou would know my wife, because she is the one who has all the red ink over her dress"; "I smell something. Whoof" and references to women as "whores," "sluts" and "girls" amounted only to "petty slights and inconveniences" not gender based hostile work environment under the NYCHRL*); Kolenovic v. ABM Indus. Inc.*, 2012 NY Slip Op 31959U, *9 (N.Y. Sup. Ct. N.Y. Cnty. July 23, 2012) (comments such as "her boobs are always popping out"; "she is wearing her thong today" and "I'm going to a bachelor party. . .would you like to make some extra money" found to be "too petty and trivial to rise to an actionable level" under NYCHRL). Even the allegation that Mr. Beck "recommended that female employees wear short skirts when promoting TEP events" (First Amended Compl. at ¶ 45) is "relatively benign" and does not contribute to creation of a hostile work environment. *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004).

Moreover, the First Amended Complaint's allegations undermine rather than support Doyle's NYCHRL hostile work environment claim based on gender. The supposedly hostile work environment that TEP created evidently did not unreasonably interfere with Doyle's work performance. On the contrary, Doyle herself alleges that "the last weekly report showed that Ms. Doyle had the second highest activity on her team" (First Amended Compl. at ¶ 39) and that she was "regularly ranked as having the second highest pipeline activity in her department" (First Amended Compl. at ¶ 47). The First Amended Complaint is replete with conclusory allegations too vague to state a gender based hostile work environment claim under the NYCHRL. The few allegations that bear any specificity are either "petty slights and

14

inconveniences" or directly contradict the notion that she suffered a hostile work environment. Accordingly, Doyle's NYCHRL hostile work environment claim must be dismissed.

## POINT IV
## DOYLE'S RETALIATION CLAIM IS BOTH REDUNDANT AND MERITLESS AND THEREFORE MUST BE DISMISSED

At the outset, Doyle's retaliation claim must be dismissed because it is duplicative of her wrongful termination claim. This Court has routinely dismissed either wrongful termination based on gender discrimination or retaliation claims when they are duplicative of each other. *Bermudez*, 783 F. Supp.2d at 592; *Prince v. Cablevision Sys. Corp.*, No. 04 Civ. 8151, 2005 WL 1060373, at *12 (S.D.N.Y. May 6, 2005). In the First Amended Complaint, Doyle has attempted causes of action for both unlawful termination based on gender and pregnancy discrimination and retaliation based on termination for complaining about alleged gender and pregnancy discrimination. Should the unlawful termination claim somehow survive, the retaliation claim should be dismissed as duplicative.

Even if this Court determines that the retaliation claim is not duplicative of the unlawful termination claim, the retaliation claim still warrants dismissal. In order to state a NYCHRL retaliation claim, a plaintiff must properly allege that (1) she engaged in a protected activity; (2) the employer was aware of the activity; (3) plaintiff was subjected to an adverse or "disadvantageous" employment action; and (4) a causal connection existed between the protected activity and the alleged retaliatory action. *Forrest*, 3 N.Y.3d at 312-313. For the following additional reasons, Doyle's retaliation claim is meritless and must be dismissed.

*Doyle does not sufficiently allege participation in a protected activity*

"Protected activity" refers to action taken opposing unlawful discrimination. *Sharpe v. MCI Communications Servs. Inc.*, 684 F. Supp.2d 394, 406 (S.D.N.Y. 2010); *Forrest*,

15

3 N.Y.3d at 313. Courts have ruled that internal complaints do not constitute protected activity for retaliation purposes. *Dunn v. Sederakis*, No. 11 Civ. 8210, 2015 WL 6681134 at *7 (S.D.N.Y. Nov. 2, 2015); *Kassman v. KPMG, LLP*, 925 F. Supp.2d 453, 473 (S.D.N.Y. 2013) (intra-company complaints were not "protected activity" for retaliation purposes); *Constantine*, 6 Misc.3d at 312. It is the responsibility of the person complaining to clarify to the employer that she is complaining of unfair treatment because of her membership in a protected class and not complaining merely of unfair treatment generally. *Sharpe*, 684 F Supp 2d at 406; *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp.2d 289, 308-309 (S.D.N.Y. 2009). Moreover, an employee must do more than just show she subjectively believed her employer was engaged in unlawful discriminatory conduct; she must demonstrate that her belief was 'objectively reasonable' in light of the facts presented. *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp.2d 273, 279 (S.D.N.Y. 2009); *Tarascio v. NBC Universal*, 2016 NY Slip Op 30200(U), at *43 (N.Y. Sup. Ct. N.Y. Cnty. February 4, 2016).

Doyle alleges twice in the First Amended Complaint that she complained of "gender discrimination." The first instance appears in paragraph 48 where Doyle alleges "[s]hortly thereafter [September 2013], Ms. Doyle complained to Mr. Levitan [TEP's vice president] of gender discrimination, citing TEP's lack of attention and support in providing her with leads and denying her leads that she independently generated. . . ." (First Amended Compl. at ¶ 48). The second instance appears in paragraph 51:

> On or about October 10, 2013, Ms. Doyle complained to Mr. Beck of gender discrimination. She told him she felt that the office was a "boys' club" where male employees were favored over female employees. She also told Mr. Beck that she believed the "men only" events were demoralizing to TEP's female employees, who felt disadvantaged and excluded from career

opportunities.

(Id. at ¶ 51). Here, Doyle complains only to Mr. Levitan and once to Mr. Beck, two TEP executives. As such, Doyle has not engaged in a protected activity for retaliation purposes. Her retaliation claim therefore should fail.

Assuming that these two intra-company complaints are considered protected activity, Doyle still has not made out a valid NYCHRL retaliation claim. First, her allegations suffer from the same vagueness and ambiguity that plagues most of the First Amended Complaint. Her subjective characterizations that she complained of "gender discrimination" is merely a paper thin label attached to two more examples of a litany of vague and conclusory allegations that do not set forth engagement in a protected activity, let alone articulation of discrimination at all. Since her allegations do not make out any claim of protected activity, any analysis regarding whether the TEP Defendants were aware that Doyle was aware that she was opposing unlawful discrimination is moot.

*Doyle cannot show a causal connection to her termination and her so-called "protected activity"*

Nothing in the First Amended Complaint remotely describes that her termination resulted from gender discrimination or her supposedly protected activity, i.e. her complaints of fictitious gender discrimination. Even under the NYCHRL's lenient standard, a plaintiff still must put forth facts tending to show a causal connection between her activity and the employer's adverse action. *Bloomberg LP*, 967 F. Supp.2d at 862. The only gossamer link Doyle presents in the First Amended Complaint comes in paragraphs 56 and 57:

> 56.    On November 11, 2013, less than one month after Doyle complained of gender discrimination and after numerous complaints to her superiors regarding TEP's discriminatory conduct, TEP abruptly terminated Ms. Doyle's employment.

17

57.    TEP unlawfully terminated Ms. Doyle because of its
animus against women, and for her complaints of gender
discrimination.

(Id. at ¶¶ 56-57). Such bald assertions and conclusory allegations will not survive a motion to

dismiss. On this basis alone, Doyle's NYCHRL retaliation claim fails.

To the extent that Doyle relies on temporal proximity between her gender

discrimination complaint and her termination to show a causal connection, this too is inadequate.

Although temporal proximity is sometimes sufficient to establish an inference of discrimination,

it is impotent here, especially when temporal proximity is the only rationale that can be gleaned

from the First Amended Complaint. *Bloomberg LP*, 967 F. Supp.2d at 862; *Kerman-Mastour v.*

*Fin. Indus. Regulatory Auth., Inc.*, 814 F. Supp.2d 355, 371, 373-374 (S.D.N.Y 2011)

(dismissing NYCHRL gender discrimination and retaliation claims where temporal proximity, as

the only causal connection factor, creates at most a "weak inference of discriminatory intent");

*Chow v. Stride Rite Corp.*, No. 05 Civ. 02417, 2009 WL 196030, at *10 (S.D.N.Y. Jan. 27, 2009).

Doyle's reliance on the "less than one month" temporal closeness between her "gender

discrimination" complaint to Mr. Beck and her termination in order to establish a causal

connection is misguided. Her retaliation claim is baseless.

Besides the First Amended Complaint's generally vague and obscure allegations

and that temporal proximity is extremely weak to show causal connection, Doyle fails to make

out a retaliation claim because she affirmatively alleges that there was no causal connection.

In *Constantine v. Kay*, plaintiff states in her complaint that she complained

numerous times about harassing conduct to her superiors prior to her threat to report a male

employee of sexual harassment. *Constantine*, 6 Misc. at 312. The plaintiff also alleged that she

was fired several days after threatening to report Kay. *Id.* The *Constantine* court ruled that since plaintiff had reported Kay in the past without any retaliatory action being taken, there was no causal connection between any protected activity and her termination and dismissed the complaint in its entirety. *Id.*

Here, Doyle does not allege any adverse employer action after she complained about gender discrimination in and around September 2013 (First Amended Compl. at ¶ 48). She also complained about Mr. Beck's "cock tease" comment on or about October 8, 2013 to Ms. Bruderer and again does not allege any adverse employer action. (Id. at ¶ 50). Accordingly, just like the *Constantine* plaintiff, Doyle fails to state a claim upon which relief can be granted and similarly, her complaint should be dismissed.

### Conclusion

For all of the foregoing reasons, the Court should dismiss the First Amended Complaint in its entirety with prejudice and award the TEP Defendants such other and further relief as the Court deems just and proper.

LAW OFFICE OF DAVID S. HONG

By: /s David S. Hong
David S. Hong
350 West 42nd Street, Suite 19H
New York, New York 10036
(646) 504-9494
david@davidhonglaw.com

*Attorneys for TEP Events International, Ltd.
and TEP Events International, Inc.*

Dated: June 30, 2016