**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------X
JENNIFER DOYLE,

     *Plaintiff,*

    *v.*            **16 CV 0856 (AKH)**

TEP EVENTS INTERNATIONAL, LTD., TEP EVENTS
INTERNATIONAL, INC. *a/k/a* DUUZRA SOFTWARE
INTERNATIONAL LIMITED, *and* PAUL BECK,
*individually,*

     *Defendants.*
----------------------------------------------------------------------X

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT WITH PREJUDICE**
_____

**THE HARMAN FIRM, LLP**
Walker G. Harman, Jr.
Edgar M. Rivera
220 Fifth Avenue, Suite 900
New York, New York 10001
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 2

STANDARD...................................................................................................................... 6

ARGUMENT .................................................................................................................. 10

POINT I .................................................................................................................. 10
Plaintiff Satisfactorily Pleads A Claim For Gender Discrimination Because Miscarriages Are Pregnancy Related Medical Conditions Under The NYCHRL

POINT II.................................................................................................................. 13
Plaintiff Satisfactorily Pleads A Case For Unlawful Termination Based On Gender Because She Has Provided Ample Evidence Demonstrating That A Causal Nexus Exists Between The Discriminatory Statements And Conduct And Defendants' Decision To Terminate Her

POINT III ............................................................................................................... 15
Plaintiff Adequately Pleads A Claim Of Hostile Work Environment Based On Gender And Pregnancy

POINT IV ............................................................................................................... 18
Plaintiff Satisfactorily Pleads A Claim Of Retaliation Based On Complaints Of Gender-Based Discrimination Because She Opposed Defendants' Gender-Based Discrimination And Was Terminated Shortly Thereafter Without Prior Discipline

POINT V................................................................................................................. 21
In The Alternative, Plaintiff Seeks Leave To File A Second Amended Complaint

CONCLUSION................................................................................................................ 21

**TABLE OF AUTHORITIES**

## Cases

*Albright v. Southern Trace Country Club of Shreveport, Inc.*
   879 So.2d 121 (L.A. 2004) ................................................................................14

*Arar v. Ashcroft*
   585 F.3d 559 (2d Cir. 2009)...........................................................................6, 19

*Bank of New York Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*
   No. 11 Civ. 0505, 2011 WL 2610661 (S.D.N.Y. June 27, 2011)....................16

*Bermudez v. City of New York*
   783 F. Supp. 2d 560 (S.D.N.Y. 2011) ..........................................................8, 17

*Bermudez v. City of New York*
   No. 1:10-CV-1162 ALC, 2015 WL 1500235 (S.D.N.Y. Mar. 31, 2015).........9

*Carlton v. Mystic Trans., Inc.*
   202 F.3d 129 (2d Cir. 2000)............................................................................16

*Carter v. Syracuse City School District*
   15-2395, 2016 WL 3671631 (2d Cir. July 11, 2016).......................................7

*Chin v. N.Y. City Hous. Auth.*
   2011 N.Y. Slip Op 31900U (N.Y. Sup. Ct. N.Y. Cnty. July 7, 2011)............17

*Constantine v. Kay*
   6 Misc. 3d 927 (N.Y. Sup. Ct. Kings Cnty. 2004)..........................................20

*Conway v. Electro Switch Corp.*
   825 F.2d 593 (1st Cir. 1987) ...........................................................................14

*DeFrancesco v. Metro N.R.R.*
   2012 NY Slip Op 31626 (U) (N.Y. Sup. Ct. NY Cnty. June 18, 2012)......12, 13

*Dunn v. Sederkis*
   No. 11 Civ. 8210, 2015 WL 6681134 (S.D.N.Y. Nov. 2, 2015) .....................18

*E.E.O.C. v. Bloomberg L.P.*
   967 F. Supp. 2d 816 (S.D.N.Y. 2013) .............................................................10

*Glint Factors, Inc. v. Schnapp*
   126 F.2d 207 (2d Cir. 1942) ............................................................................21

*Gorokhovsky v. N.Y. City Hous. Auth.*
   552 F. App'x 100 (2d Cir. 2014) .....................................................................11

*Kassman v. KPMG, LLP*
   925 F. Supp. 2d, 473 (S.D.N.Y. 2013) ........................................................18, 19

*Kerman-Mastour v. Fin. Indus. Regulatory Auth.,Inc.*
   814 F. Supp 2d 355 (S.D.N.Y. 2011) ..............................................................19

*Kolenovic v. ABM Indus. Inc.*
   2012 NY Slip Op 31959(U) (N.Y. Sup. Ct. N.Y. Cnty. July 23, 2012) ..........18

*Littlejohn v. City of New York*
   795 F.3d 297 (2d Cir. 2015)............................................................................12

*Magnoni v. Smith & Laquercia*
   701 F. Supp. 2d 497 (S.D.N.Y. 2010) .............................................................17

*Manoharan v. Columbia Univ.*
   842 F.2d 590 (2d Cir. 1988).............................................................................20

*McDonnell Douglas Corp. v. Green*
   411 U.S. 792 (1973)...........................................................................................7

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*
   715 F.3d 110 (2d Cir. 2013)............................................................................10

*Olle v. Columbia Univ.*
   332 F.Supp.2d 599 (S.D.N.Y. 2004) ...............................................................18

*Ostrowski v. Atlantic Mutual Insurance Co.*
   968 F.2d 171 (2d Cir. 1992).............................................................................14

*Quinlan v. Curtiss-Wright Corp.*

204 N.J. 239 (N.J. 2010) ..............................................................................................14
*Robinson v. 12 Lofts Realty, Inc.*
   610 F.2d 1032 (2d Cir.1979)......................................................................................7
*Schiano v. Quality Payroll Sys., Inc.*
   445 F.3d 597 (2d Cir. 2006)......................................................................................9
*Schreiber v. Worldco, LLC*
   324 F. Supp. 2d 512 (S.D.N.Y. 2004) ..............................................................13, 16, 17
*Scott-Iverson v. Independent Health Ass.*
   No. 13-CV-0451-A(Sr), 2014 WL 3107289 (W.D.N.Y. July 7, 2014)...........................9
*Siegal v. Converters Transp., Inc.*
   714 F.2d 213 (2d Cir. 1983). ....................................................................................21
*Sotomayor v City of New York*
   862 F. Supp. 2d 226 (E.D.N.Y. 2012) *aff'd,* 713 F.3d 163 (2d Cir. 2013)...................10
*Swierkiewicz v. Sorema N. A.*
   534 U.S. 506 (2002)..................................................................................................6
*Torres v. New York Methodist Hosp.*
   No. 15CV1264PKCPK, 2016 WL 3561705 (E.D.N.Y. Jan. 7, 2016).............................9
*Vega v. Hempstead Union Free Sch. Dist.*
   801 F.3d 72 (2d Cir. 2015)........................................................................................7
*Walsh v. New York City Housing Authority*
   Docket No. 14-181-cv, 2016 WL 3632245 (2d Cir. 2016).........................................8
*Williams v. New York City Hous. Auth.*
   61 A.D.3d 62 (2009) .................................................................................................7
*Wilson v. N.Y.P. Holdings, Inc.*
   No. 05 CIV.10355, 2009 WL 873206 (S.D.N.Y. Mar. 31, 2009) ...........................15, 17

**Statutes**
29 U.S.C. § 215(3) .....................................................................................................18
FED. R. CIV. P. 15 .......................................................................................................21
FED. R. CIV. P. 8 ..........................................................................................................6
Local Law No. 35 (2016)..............................................................................................9
Local Law No. 85 § 1 (2005)........................................................................................8
N.Y. Admin. Code §8-105 ..........................................................................................10
N.Y. Admin. Code 8-107(7) .......................................................................................18
N.Y.C. Admin. Code § 8–107(1)...................................................................................8
N.Y.C. Admin. Code § 8-130(a)....................................................................................8
N.Y.C. Admin. Code § 8-130(b)....................................................................................9

**Other Authorities**
*NYC Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Pregnancy:*
   *Local Law No. 78* .........................................................................................10, 11, 12, 16

Plaintiff Jennifer Doyle respectfully submits this Memorandum of Law in Opposition to Defendants' Motion To Dismiss the First Amended Complaint With Prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The motion to dismiss that TEP Events International, Ltd. and TEP Events International, Inc. a/k/a Duuzra Software International Limited (collectively "Defendants" or "TEP") brings is without merit, rife with mistakes of law, and misguided with respect to the obligations the City of New York requires of the businesses that enjoy the privilege of doing business here. First, under the New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code § 8-107, a plaintiff may bring a pregnancy discrimination claim where the employer learned of the pregnancy after she miscarried as discrimination based on a "pregnancy related medical condition." Second, Ms. Doyle alleges facts that give rise to a plausible inference that her termination was at least partially motivated by unlawful gender discrimination. Third, Defendants' "petty slights and trivial inconveniences" affirmative defense is inappropriate for a Rule 12(b)(6) motion. Fourth, internal complaints about gender discrimination are protected activity under the NYCHRL.

Led by Chief Executive Officer Paul Beck, TEP fostered a work culture that forced its female employees, including Ms. Doyle, to accept second-class status as a condition of employment: TEP executives held career-furthering events that were prohibited to females; they made cruel comments ridiculing women; they questioned Ms. Doyle's loyalty to the organization because she became pregnant; they valued women based on their appearance and sexual availability; and they stereotyped Ms. Doyle as being weaker than her male coworkers because she is a woman. In response to Ms. Doyle's complaints of TEP's discrimination against women,

TEP summarily terminated her. TEP's failure to provide its female employees a fair chance at success with the organization and its refusal to even investigate Ms. Doyle's legitimate complaints about TEP's work culture violate the NYCHRL, one of the most robust and ambitious civil rights statutes in the United States, which aims to provide New York City's working women the same opportunities to earn and prosper as men.

Plaintiff has more that adequately pled her claims under the NYCHRL. Accordingly, Defendants' motion to dismiss must be denied.

## STATEMENT OF FACTS

The following facts are from the First Amended Complaint.

On or about March 22, 2013, Defendants hired Ms. Doyle as a Business Development Manager. Compl. ¶ 12. On or about April 6, 2013, Plaintiff Jennifer Doyle began her employment with Defendants; she was about eight weeks pregnant at that time. Compl. ¶¶ 14, 15. On or about April 6, 2013, TEP flew Ms. Doyle to the United Kingdom for new hire training, which began on April 8, 2013. Compl. ¶ 16.

Defendant Paul Beck, TEP's Chief Executive Officer, supported a work environment where TEP's female employees were subjected to, among things, sexual innuendo, comments about women's bodies, sexual stories, lewd images, sabotage of their work, hostile insults of women, recommendations that women wear revealing clothes, and admonishments against pregnancy and family building. He referred to Ms. Doyle and another female employee, the two oldest women in the group, as the "two old birds." Compl. ¶ 18. He told Ms. Doyle that the night before he had found a male employee naked and passed out on a bed with his "hands over his cock." Compl. ¶ 19. Later that week, Yvonne Donevan, a TEP employee, warned Ms. Doyle not to disclose to Mr. Beck any intention to have children because he viewed pregnant

salespersons as an impediment to TEP's sales. Compl. ¶ 20. Later that evening, Mr. Beck had a "men only" event, staying at a restaurant with only the male employees after dismissing all of the female employees. Compl. ¶ 21.

In and around the week of April 15, 2013, Ms. Doyle began working at TEP's New York City office. Compl. ¶ 22. TEP's New York City workplace was sexually charged: Defendants displayed sexually offensive images; Defendants condoned sexually offensive language; and Defendants fostered a work environment that encouraged sexual relationships between female employees with male supervisors, communicating that the way for women to get ahead in the workplace was by engaging in sexual conduct and that sexual solicitations were a prerequisite to their fair treatment. Compl. ¶ 23. Mr. Beck covered his office with images of naked women. Compl. ¶ 24. Mr. Beck referred to a female TEP employee in a group email to the staff as the "slim pretty girl." Compl. ¶ 25. Mr. Beck continued to hold "men only" events, which prevented Ms. Doyle and other female employees from advancing within TEP. Compl. ¶ 26.

Defendants were antagonistic toward female employees having children. Compl. ¶ 23. On the morning of April 23, 2013, Ms. Doyle discovered she had miscarried. Compl. ¶ 27. Ms. Doyle called TEP's Vice President of Sales, Chuck Levitan, to request medical leave for an emergency medical procedure the following day and later told him that she had miscarried. Compl. ¶¶ 28, 29. On April 24, 2013, while traveling home from the hospital after the procedure, Ms. Doyle learned that Mr. Beck was upset that she "hid her pregnancy" from him at the time of her application and hire. Compl. ¶ 30. She therefore returned to work the next day out of fear of losing her job. Compl. ¶ 31. Upon return, Mark Cramb, a TEP sales director, told her that Mr. Beck was angry at her for being "untruthful" by not disclosing her pregnancy at the time she was hired. Compl. ¶ 32. Ms. Doyle asked Mr. Levitan for advice, anticipating a

meeting with Mr. Beck.  Compl. ¶ 33.  She asked whether Mr. Levitan thought Mr. Beck would

have hired her had he known that she was pregnant.  Compl. ¶ 33.  Mr. Levitan responded: "I

cannot comment on that."  Compl. ¶ 34.  On or about the next day, Mr. Beck had a telephone

meeting with Ms. Doyle.  Compl. ¶ 35.  During the call, he curtly asked her if she was

"committed to her job at TEP" in light of her pregnancy and miscarriage.  Compl. ¶ 35.

     In and around the week of May 13, 2013, Mr. Beck scheduled individual meetings with

each TEP staff member to discuss his or her progress.  Compl. ¶ 36.  Throughout the week, Mr.

Beck refused to make eye contact with Ms. Doyle or speak to her.  Compl. ¶ 37.  When it was

Ms. Doyle's turn to meet with Mr. Beck, he abruptly left the office, refusing to give Ms. Doyle

career-advancing feedback.  Compl. ¶ 38.  Later that day, Mr. Levitan told Ms. Doyle that Mr.

Beck was very upset with her performance.  Compl. ¶ 39.  Ms. Doyle was blindsided by the

remark, as the last weekly report showed that Ms. Doyle had the second highest activity on her

team.  Compl. ¶ 39.  Mr. Levitan told Ms. Doyle not to protest Mr. Beck's assessment of her

performance, as Mr. Beck had already made up his mind about her and pointing out that Mr.

Beck's conclusion was based on incorrect data would only make things worse.  Compl. ¶ 40.

Undeterred, Ms. Doyle emailed the statistics from the weekly report, which showed her high

performance, to Mr. Beck, Mr. Levitan, and James Lawrence, TEP's Co-Owner.  Compl. ¶ 41.

Ms. Doyle did not receive a response to that email.  Compl. ¶ 42.

     In and around the week of June 24, 2013, Mr. Lawrence retaliated against Ms. Doyle for

her email by gratuitously insulting her.  Compl. ¶ 43.  He criticized her, telling her that if he were

the client he would not buy from her.  Compl. ¶ 43.  Contrary to Mr. Lawrence's meritless

criticism, on or about July 10, 2013, TEP's Group Chief Financial Officer, Paul Cunniff, told

Ms. Doyle that he was impressed with her product knowledge and told her to keep up the good

work.  Compl. ¶ 44.  In and around the week of July 10, 2013, Mr. Beck recommended that the female employees wear short skirts when promoting TEP events.  Compl. ¶ 45.  Additionally, TEP was still holding "men only" events.  Compl. ¶ 46.

In and around September 2013, despite Ms. Doyle regularly ranking as having the highest pipeline activity in her department, TEP took away a lead from her without any explanation and gave it to a male employee, costing Ms. Doyle an opportunity for higher earnings.  Compl. ¶ 47. Shortly thereafter, Ms. Doyle complained to Mr. Levitan of gender discrimination, citing TEP's lack of attention and support in providing her with leads and denying her leads that she independently generated.  Compl. ¶ 48.  Defendants failed to address the issues that Ms. Doyle raised.  Compl. ¶ 48.

On or about October 8, 2013, in reference to Ms. Doyle's report about a vendor possibly pulling out of a deal with a competitor, Mr. Beck moved closer to her, coming very close to her face, and said, "Do you know what we call that in the U.K.? A cock tease."  Compl. ¶ 49.  Mr. Beck's conduct offended Ms. Doyle and made her feel very uncomfortable.  Compl. ¶ 49.  She complained about Mr. Beck's comment to Bonnie Bruderer, TEP's Business Development Director, who responded that the comment was "hilarious."  Compl. ¶ 50.  On or about October 10, 2013, Ms. Doyle complained to Mr. Beck of gender discrimination.  Compl. ¶ 51.  She told him that she felt that the office was a "boys' club" where male employees were favored over female employees.  Compl. ¶ 51.  She also told Mr. Beck that she believed the "men only" events were demoralizing to TEP's female employees, who felt disadvantaged and excluded from career opportunities.  Compl. ¶ 51.

Perhaps defending himself against Ms. Doyle's accusations, Mr. Beck responded that he was not sexist because he was promoting another female employee, Ms. Bruderer, because she

was "single," "did not have a family," and would help TEP "hire a younger workforce." Compl. ¶ 52. It was well known that Ms. Bruderer was having an affair with TEP's Chief Financial Officer, making clear that female employees would need to have sex with the male executives if they wanted to advance at TEP. Compl. ¶ 53. Ms. Doyle and Ms. Bruderer were the only two female management-level employees at that time in TEP's New York City office. Compl. ¶ 54. During that conversation, Mr. Beck also called Ms. Doyle the "mother hen" at TEP in reference to her age and gender. Compl. ¶ 55.

On November 11, 2013, TEP terminated Ms. Doyle's employment. Compl. ¶ 56. TEP unlawfully terminated Ms. Doyle because of its animus against women, and in retaliation for her complaints of gender discrimination. Compl. ¶ 57.

## STANDARD

Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A complaint is sufficient, and should not be dismissed, if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint satisfies the requirements of Rule 8(a) if it gives respondent "fair notice of the basis for petitioner's claims." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002). In determining whether a complaint provides such notice, the court must accept all factual allegations of the complaint as true and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff. *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009). "[I]n a Title VII discrimination case a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race,

color, religion, sex, or national origin was a motivating factor in the employment decision."[1]

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). In other words, to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must only allege that the employer took adverse action against her at least in part for a discriminatory reason. *Id.* She may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination. *Id.* The Second Circuit regularly reverses district court decisions that require plaintiffs to establish a *prima facie* case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) at the pleading stage. *See, e.g., Carter v. Syracuse City School District*, 15-2395, 2016 WL 3671631, at *2 (2d Cir. July 11, 2016) (summary order).

In making the plausibility determination, the court must be mindful of the "elusive" nature of intentional discrimination. *Vega*, 801 F.3d at 86. "Clever men may easily conceal their motivations." *Id.* (quoting *Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032, 1043 (2d Cir.1979)). Because discrimination claims implicate an employer's usually unstated intent and state of mind, rarely is there direct, "smoking gun" evidence of discrimination. *Id.* Instead, plaintiffs usually must rely on bits and pieces of information to support an inference of discrimination, *i.e.,* a mosaic of intentional discrimination. *Id.* A court evaluating whether a plaintiff has stated a claim for discrimination must evaluate the allegations as a whole, never in isolation. *See Walsh v. New York City Housing Authority*, Docket No. 14-181-cv, 2016 WL 3632245, at *4 (2d Cir.

---

[1] Although Ms. Doyle's claims are brought under the NYCHRL, there are a dearth of cases determining what a plaintiff must allege for a NYCHRL claim to survive a motion to dismiss. As such, *Vega* and its antecedents may aid the court, but are not mandatory authority. *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 66-67 (2009) ("it is clear that interpretations of State or federal provisions worded similarly to City HRL provisions may be used as aids in interpretation only to the extent that the counterpart provisions are viewed "as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise" (§ 1), and only to the extent that those State- or federal-law decisions may provide guidance as to the 'uniquely broad and remedial' provisions of the local law.").

2016) (reversing summary judgment upon finding that district court viewed each piece of evidence in isolation).

There are two types of sexual harassment claims: (1) claims based on direct discrimination (also called *quid pro quo* sexual harassment), and (2) claims based on a hostile environment due to sexual harassment. *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011). The so-called *quid pro quo* sexual harassment, "occurs when an employer alters an employee's job conditions or withholds an economic benefit because the employee refuses to submit to sexual demands." *Id.* The second type of sexual harassment, called hostile environment, occurs when an employer's conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. *Id.* Ms. Doyle brings her claims under the second type, hostile work environment.

NYCHRL § 8–107(1) provides, in pertinent part:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived [ ... ] gender [ ... ] to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

N.Y.C. Admin. Code § 8–107(1)(a). The NYCHRL, under the 2005 Civil Rights Restoration Act, must be construed "independently from similar or identical provisions of New York state or federal statutes," such that "similarly worded provisions of federal and state civil rights laws [are] a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise." Local Law No. 85 § 1 (2005); *see* N.Y.C. Admin. Code § 8-130(a) ("The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to

provisions of this title, have been so construed.").  In addition, exemptions to the NYCHRL must be construed "narrowly in order to maximize deterrence of discriminatory conduct."  Local Law No. 35 (2016); N.Y.C. Admin. Code § 8-130(b).

Under the NYCHRL, pregnancy discrimination is discrimination based on gender.  *See, e.g., Wilcox v. Cornell Univ.*, 986 F. Supp. 2d 281, 285 (S.D.N.Y. 2013).  To state a claim for gender discrimination based on a hostile work environment, there is no requirement that harassment be severe or pervasive under the NYCHRL.  *Williams*, 61 A.D. 3d at 76 (criticizing the "severe or pervasive" standard for condoning terms and conditions of employment that include being on the receiving end of all unwanted gender-based conduct except what is severe or pervasive).  Instead, for NYCHRL liability, the primary issue for a trier of fact in hostile work environment cases is whether the plaintiff has proven by a preponderance of the evidence that "she has been treated less well than other employees because of her gender."  *Id.* at 78. Determining whether there is a hostile work environment is a fact-bound area of law that is particularly ill-suited to dismissal at the pleading stage.  *Scott-Iverson v. Independent Health Ass.*, No. 13-CV-0451-A(Sr), 2014 WL 3107289, at *5 (W.D.N.Y. July 7, 2014) (quoting *Williams*, 154 F. Supp. 2d at 822).  *Torres v. New York Methodist Hosp.*, No. 15CV1264PKCPK, 2016 WL 3561705, at *9 (E.D.N.Y. Jan. 7, 2016).  The Second Circuit has cautioned district courts that the existence of a hostile work environment "presents mixed questions of law and fact that are especially well-suited for jury determination."  *Bermudez v. City of New York*, No. 1:10-CV-1162 ALC, 2015 WL 1500235, at *9 (S.D.N.Y. Mar. 31, 2015) (quoting *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 605 (2d Cir. 2006)).

To be actionable under the NYCHRL, retaliatory acts complained of must be reasonably likely to deter a person from engaging in protected activity. *Sotomayor v City of New York*, 862 F. Supp. 2d 226 (E.D.N.Y. 2012) *aff'd,* 713 F.3d 163 (2d Cir. 2013).

## ARGUMENT

Ms. Doyle has satisfactorily pled claims for unlawful termination and hostile work environment based on gender and retaliation for complaints of gender-based discrimination.

## POINT I

### PLAINTIFF SATISFACTORILY PLEADS A CLAIM FOR GENDER DISCRIMINATION BECAUSE MISCARRIAGES ARE PREGNANCY RELATED MEDICAL CONDITIONS UNDER THE NYCHRL

To establish a pregnancy discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender. *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 837 (S.D.N.Y. 2013) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 110 (2d Cir. 2013)). Discrimination on the basis of a woman's pregnancy includes discrimination because of any related medical condition. *See, e.g., Wilcox*, 986 F. Supp. 2d at 285. "Related medical condition" means "the state of seeking to become pregnant; any medical condition that is related to or caused by pregnancy or childbirth, including, but not limited to, infertility, gestational diabetes, pregnancy induced hypertension, preeclampsia, post-partum depression, *miscarriage*, lactation; and recovery from childbirth, *miscarriage*, and termination of pregnancy." *NYC Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Pregnancy: Local Law No. 78*, 2 (2013) (emphasis added).[2] As

---

[2] The New York City Commission on Human Rights (the "Commission") is charged with the enforcement of the NYCHRL, as well as to adopt rules to carry out its provisions. N.Y. Admin. Code §8-105 (11). The *NYC*

such, treating an individual less well because of her pregnancy, or perceived pregnancy, is gender discrimination and a violation of the NYCHRL. *Gorokhovsky v. N.Y. City Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (quoting *Mihalik*, 715 F.3d at 114 ("To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive.").

While adverse treatment may be overt, such as firing an employee because she is pregnant, discriminatory conduct on the basis of pregnancy often manifests itself in more subtle and patronizing ways. *NYC Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Pregnancy: Local Law No. 78*, 3 (2013). Such subtle forms of discrimination are actionable under the NYCHRL because they subject pregnant workers to inferior treatment. *Id.* Whether intentional or unintentional, these actions push pregnant individuals out of the job market, disrupt earnings, hamper economic advancement, and violate the NYCHRL. *Id.*

Unlawful harassment exists when the behavior creates an environment or culture of sex stereotyping, degradation, humiliation, bias, or objectification. *Id.* Under the NYCHRL, gender-based harassment related to pregnancy covers a broad range of conduct that causes an individual to be treated less well because of their pregnancy. *Id.* While the severity or pervasiveness of the harassment is relevant to damages, the existence of differential treatment based on pregnancy is sufficient under the NYCHRL to state a claim of harassment. "Harassment may include comments about a pregnant individual's weight or appearance, their age in relation to their

---

Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Pregnancy: Local Law No. 78 (the "Guidance") serves as the Commission's legal enforcement guidance on the NYCHRL's protections as they apply to discrimination and reasonable accommodations based on pregnancy, childbirth, or related medical condition. *NYC Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Pregnancy: Local Law No. 78*, 1 (2013).

pregnancy, *their commitment to their job*, or their ability to focus." *Id.* (emphasis added).

Assumptions about a pregnant worker's commitment to their job or career, for example, are often

rooted in traditional gender norms around mothering and women in the workforce and may not

be used to justify disparate treatment. *Id.* at 4.  An inference of discrimination can arise from

circumstances including, but not limited to, the employer's criticism of the plaintiff's

performance in degrading terms relevant to her protected class; or its comments about others in

the employee's protected class; or the more favorable treatment of employees not in the

protected class; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City

of New York*, 795 F.3d 297, 312 (2d Cir. 2015).

Here, Ms. Doyle alleges that Mr. Beck, who terminated her, was angry with her for not

disclosing that she was pregnant at the time of her application and questioned her loyalty to

Defendant for becoming pregnant.  Compl. ¶¶ 30 –35.  She also alleges that Ms. Donevan told

her not to disclose to Mr. Beck any intention to have children because he viewed pregnant

salespersons as an impediment to TEP's sales.[3]

Defendants disregard the text of the NYCHRL and the Commission's Guidance.  Instead,

they cite, out of context, two sentences in *DeFrancesco v. Metro N.R.R.*, 2012 NY Slip Op

31626 (U) (N.Y. Sup. Ct. NY Cnty. June 18, 2012) (unpublished)—"Subsequent to her

miscarriage and prior to her termination from employment, plaintiff did not re-conceive.

Therefore any pregnancy based discrimination claim is without any factual basis"—to suggest

that a woman cannot suffer pregnancy discrimination where she miscarried prior to her employer

learning that she had been pregnant and had planned to become pregnant.  In *DeFrancesco v.

Metro*, a reasonable accommodation case, the plaintiff brought a gender discrimination claim

---

[3] Whether this comment is inadmissible hearsay is an inappropriate inquiry prior to summary judgment.  *Arar*, 585 F.3d at 567 (2d Cir. 2009) ("the court must accept all factual allegations of the complaint as true, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff").

based on defendant's requirement that all employees wear a ticket issue machine ("TIM"). *Id.* at 2. On summary judgment, with a complete record, the court dismissed the case upon the finding that plaintiff did not have a disability; therefore, the defendant was not required to grant her the requested accommodation. Also, the court found that plaintiff failed to show that she was qualified to do the job since she refused to use a TIM, so could not establish a *prima facie* case. *Id.* at 13-17. *DeFrancesco* does not stand for the proposition Defendants attempt to use it for, and it is inapposite; here, Plaintiff alleges specific conduct and comments based on the fact that she had been pregnant and miscarried.

Accordingly, Ms. Doyle has satisfactorily pled her termination was partially motivated by gender discrimination.

## POINT II

### PLAINTIFF SATISFACTORILY PLEADS A CASE FOR UNLAWFUL TERMINATION BASED ON GENDER BECAUSE SHE HAS PROVIDED AMPLE EVIDENCE DEMONSTRATING THAT A CAUSAL NEXUS EXISTS BETWEEN THE DISCRIMINATORY STATEMENTS AND CONDUCT AND DEFENDANTS' DECISION TO TERMINATE HER

Ms. Doyle has alleged facts that causally connect her termination to any discriminatory motive: Mr. Beck made comments that suggest an animus against women and promoted policies that facially discriminated against women.

Verbal comments constitute evidence of discriminatory motive when a plaintiff demonstrates that a causal nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff. *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2004). Individual stray remarks are evidence of discrimination where a reasonable jury could conclude that the remarks reflected a discriminatory atmosphere and, consequently, constituted evidence of discrimination when viewed collectively. *Id.* at 522 (citing

*Ostrowski v. Atlantic Mutual Insurance Co.,* 968 F.2d 171, 182 (2d Cir. 1992); *Conway v. Electro Switch Corp.,* 825 F.2d 593, 597 (1st Cir. 1987)).

Notably absent from Defendants' argument are Mr. Beck's offensive statements and conduct. Mr. Beck referred to Ms. Doyle and another female employee, the two oldest women in the group, as the "two old birds" (Compl. ¶ 18), told Ms. Doyle a sexual story about a male employee passed out on a bed with his "hands over his cock" (Compl. ¶ 19), called Ms. Doyle "the mother hen" (Compl. ¶ 55), covered his office with images of naked women (Compl. ¶ 24), referred to a female TEP employee in a group email to the staff as the "slim pretty girl" (Compl. ¶ 25), regularly held "men only" events[4] (Compl. ¶¶ 26, 45, 46, 51), took away a lead from her to give to a male employee (Compl. ¶ 47), questioned if she was "committed to her job at TEP" in light of her pregnancy and miscarriage (Compl. ¶ 35), commented that a vendor was "a cock tease" (Compl. ¶ 49), promoted a female employee because she allegedly was "single," "did not have a family," and would help TEP "hire a younger workforce" (Compl. ¶ 52), and called Ms. Doyle the "mother hen" at TEP in reference to her age and gender (Compl. ¶ 55). These comments and actions evidence a discriminatory motive.

Defendants mistakenly argue that "petty slights or trivial inconveniences" are "not actionable." Def.'s Mem. p. 9-10. The "petty slights or trivial inconveniences" defense is an affirmative defense to a hostile work environment claim, not unlawful termination, as Defendants' own case law makes clear. *See, e.g.*, *Mihalik*, 715 F.3d at 102, 111 (holding that the employer may prevail on summary judgment with respect to a harassment claim where it shows

---

[4] The prohibition against women attending an event facially violates the NYCHRL, which proscribes discrimination against an individual based on gender in terms of terms, conditions or privileges of employment. *See also Quinlan v. Curtiss-Wright Corp.*, 204 N.J. 239, 247 (N.J. 2010) (finding gender-based discrimination where plaintiff complained that employer hosted "men only" lunches and dinners); *Albright v. Southern Trace Country Club of Shreveport, Inc.*, 879 So.2d 121, 138 (L.A. 2004) (holding the exclusion of women based on their gender was discrimination).

that reasonable jury could only conclude that the conduct amounted to no more than a petty slight); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 837 (S.D.N.Y. 2013) (same); *Bermudez*, 783 F. Supp. 2d at 579 ("The standard for maintaining a hostile work environment claim is lower under the NYCHRL…. Nonetheless, even under the NYCHRL, petty, slight, or trivial inconveniences' are not actionable.") (quotations omitted); *Wilson v. N.Y.P. Holdings, Inc.*, No. 05 CIV.10355, 2009 WL 873206, at *29 (S.D.N.Y. Mar. 31, 2009) ("With respect to Plaintiffs' hostile work environment claims … defendants can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and inconveniences."). Also, this affirmative defense is not legitimate grounds for a Rule 12(b)(6) motion to dismiss, as shown below.

Accordingly, Ms. Doyle has pled a claim of gender discrimination based on her termination.

## POINT III

## PLAINTIFF ADEQUATELY PLEADS A CLAIM OF HOSTILE WORK ENVIRONMENT BASED ON GENDER AND PREGNANCY

Defendants argue that the complained-of conduct was merely "petty slights and inconveniences" and so insufficient to establish a hostile work environment. This argument fails for two reasons. First, this is an affirmative defense and, as such, Defendants bear the burden of showing that a reasonable victim of discrimination would consider Defendants' employees' behavior as "petty slights and trivial inconveniences," which Defendants cannot do at the pleading stage. Second, Ms. Doyle's allegations rise above what a reasonable victim of discrimination would consider "petty slights and trivial inconveniences."

Defendants' argument is premature. The "petty slights and trivial inconveniences" defense is an affirmative defense whereby defendants can avoid liability if they prove that the

complained-of conduct consists of nothing more than what a reasonable victim of discrimination would consider "petty slights and trivial inconveniences." *Mihalik*, 715 F.3d at 111 ("As with most affirmative defenses, the employer has the burden of proving the conduct's triviality under the NYCHRL"). As such, Defendants must proffer evidence that supports the defense, which is not possible until summary judgment, since courts cannot consider evidence outside of the pleadings to decide a motion under Rule 12(b)(6). In deciding a motion to dismiss, a district court may only consider the full text of documents that are quoted in or attached to the complaint, or documents that the plaintiff either possessed or knew about and relied upon in brining the suit; anything else must be excluded. *Bank of New York Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.,* No. 11 Civ. 0505, 2011 WL 2610661, at *3 (S.D.N.Y. June 27, 2011).

Even setting aside Defendants' procedural error, as stated above, unlawful harassment exists when the behavior in question creates an environment or culture of sex stereotyping, degradation, humiliation, bias, or objectification. *NYC Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Pregnancy: Local Law No. 78*, 3 (2013). "Although evidence of one stray comment by itself is usually not sufficient proof to show age discrimination, that stray comment may 'bear a more ominous significance' when considered within the totality of the evidence." *Carlton v. Mystic Trans., Inc.,* 202 F.3d 129, 138 (2d Cir. 2000). Individual stray remarks are evidence of discrimination where a reasonable jury could conclude that the remarks reflected a discriminatory atmosphere and, consequently, constituted evidence of discrimination when viewed collectively. *Schreiber*, 324 F. Supp. 2d at 522. As stated above, "[h]arassment may include comments about a pregnant individual's

weight or appearance, their age in relation to their pregnancy, *their commitment to their job*, or their ability to focus." *Id.* (emphasis added).

Here, as stated above, Mr. Beck referred to Ms. Doyle and another female employee, the two oldest women in the group, as the "two old birds" [5] (Compl. ¶ 18), told Ms. Doyle a sexual story about a male employee passed out on a bed with his "hands over his cock" (Compl. ¶ 19), called Ms. Doyle "the mother hen" (Compl. ¶ 55), covered his office with images of naked women (Compl. ¶ 24), referred to a female TEP employee in a group email to the staff as the "slim pretty girl" (Compl. ¶ 25), regularly held "men only" events (Compl. ¶¶ 26, 45, 46, 51), took away a lead from her to give to a male employee (Compl. ¶ 47), questioned her "committed to her job at TEP" in light of her pregnancy and miscarriage (Compl. ¶ 35), commented that a vendor was "a cock tease" (Compl. ¶ 49), promoted a female employee because she allegedly was "single," "did not have a family," and would help TEP "hire a younger workforce" (Compl. ¶ 52), and called Ms. Doyle the "mother hen" at TEP in reference to her age and gender (Compl. ¶ 55). These verbal comments, viewed as whole, constitute a hostile work environment.

The decisions upon which Defendants rely are inapposite. Each case was decided on summary judgment or bench trial, not a motion to dismiss, or was analyzed under the "severe or pervasive" standard, not the post-Restoration Act standard. *Chin v. N.Y. City Hous. Auth.,* 2011 N.Y. Slip Op 31900U (N.Y. Sup. Ct. N.Y. Cnty. July 7, 2011) (unpublished) (summary judgment); *Bermudez,* 783 F. Supp. 2d (summary judgment); *Magnoni v. Smith &* Laquercia, 701 F. Supp. 2d 497 (S.D.N.Y. 2010) (bench trial); *Wilson*, 2009 WL 873206 (summary

---

[5] Comments objectifying women's bodies—"two old birds," "mother hen," and "slim pretty girl"—even if considered "isolated," signal that Defendant considered it appropriate to foster an office environment that degraded women. *See Mihalik*, 715 F.3d at 113.

judgment); *Kolenovic v. ABM Indus. Inc,* 2012 NY Slip Op 31959(U) (N.Y. Sup. Ct. N.Y. Cnty.

July 23, 2012) (unpublished) (summary judgment); *Olle v. Columbia Univ.*, 332 F.Supp.2d 599

(S.D.N.Y. 2004) (summary judgment and "severe or pervasive" standard).  As such, they are all

inapplicable here.

   Accordingly, Ms. Doyle has pled a hostile work environment claim under the NYCHRL.


**POINT IV**

**PLAINTIFF SATISFACTORILY PLEADS A CLAIM OF RETALIATION BASED ON
COMPLAINTS OF GENDER-BASED DISCRIMINATION BECAUSE SHE OPPOSED
DEFENDANTS' GENDER-BASED DISCRIMINATION AND WAS TERMINATED
SHORTLY THEREAFTER WITHOUT PRIOR DISCIPLINE**

   Defendants simply ignore the black letter law: under the NYCHRL, retaliating or

discriminating in any manner against a person who has opposed any practice forbidden by the

NYCHRL is unlawful.  Instead, they misrepresent *Dunn v. Sederkis,* No. 11 Civ. 8210, 2015 WL

6681134 (S.D.N.Y. Nov. 2, 2015) and *Kassman v. KPMG, LLP,* 925 F. Supp. 2d 473 (S.D.N.Y.

2013) to suggest that internal complaints do not constitute protected activity under the

NYCHRL.  First, neither *Dunn* or *Kassman* were decided under the NYCHRL; both cases deal

with retaliation under the Fair Labor Standards Act ("FLSA"), an unrelated state with a

completely different standard for retaliation.  *Compare* 29 U.S.C. § 215(3) ("to discharge or in

any other manner discriminate against any employee because such employee has *filed any*

*complaint or instituted or caused to be instituted any proceeding* under or related to this Act

generally; for full classification, or has testified or is about to testify in any such proceeding, or

has served or is about to serve on an industry committee.") (emphasis added) (FLSA) *with* N.Y.

Admin. Code 8-107(7) ("It shall be an unlawful discriminatory practice for any person engaged

in any activity to which this chapter applies to retaliate or discriminate in any manner against any

person because such person has (i) *opposed any practice forbidden under this chapter* ….")

(emphasis added) (NYCHRL).  Second, neither case stands for the proposition for which Defendants cite them; in both cases, the plaintiffs' retaliation claims failed because they did not complain of activity protected by the FLSA, not because they were internal complaints.  *Dunn*, 2015 WL 6681134 at *110; *Kassman,* 925 F. Supp. 2d at 473.

Defendants' self-contradictory argument is self-contradictory is misses the mark. Plaintiff's complaints to Mr. Levitan and Mr. Beck—about "gender discrimination," that she felt like the office was a "boys' club", and that she found the "men only" events demoralizing—are examples of Ms. Doyle "opposing any practice forbidden" by the NYCHRL and therefore are protected activity.

Further, Defendants' argument is foreclosed by *Arar*.  In determining whether a complaint is sufficient to survive a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations of the complaint as true, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff.  585 F.3d at 567.  A reasonable trier of fact could find that Defendants terminated Ms. Doyle's employment because of unlawful retaliation due to the temporal proximity between her complaints and her termination (less than three month), the increased severity of Mr. Beck's retaliation (Mr. Beck would not speak with her, then took her leads, then ultimately terminated her), and the dearth of individuals in her protected class working for Defendants (Ms. Doyle and Ms. Bruderer were the only female executive-level employees at Defendants during Ms. Doyle's tenure).

Defendants cite *Kerman-Mastour v. Fin. Indus. Regulatory Auth.,Inc.,* 814 F. Supp. 2d 355 (S.D.N.Y. 2011), for the proposition that temporal proximity, as the only causal connection factor, creates at most a weak inference of discriminatory intent.  *Id.* at 95.  *Kerman-Mastour* is inapplicable here.  First, the court in *Kerman-Mastour* found that the two adverse employment

actions were part of an extensive period of progressive discipline. As Ms. Doyle was never put on progressive discipline, the holding in *Kerman-Mastour* does not apply here. Second, the defendant had put the plaintiff on a progressive discipline plan five months prior to plaintiff's first complaint, casting doubt that the termination was because of plaintiff's complaint, unlike here. Third, *Kerman-Mastour* was decided on summary judgment, not a motion to dismiss. As such, it was decided with a complete record, unlike here.

Defendants also misplace their reliance upon *Constantine v. Kay,* 6 Misc. 3d 927 (N.Y. Sup. Ct. Kings Cnty. 2004), which was decided prior to the Restoration Act was in effect. The court remarkably ruled that, because plaintiff had complained about defendant's harassing conduct in the past without any retaliatory action taken by defendants, she failed to show that the threat to report her supervisor again resulted in her termination, and that because she did not file a complaint with the New York State Commission on Human Rights or with the Equal Employment Opportunity Commission, she did not engage in protected activity. *Id.* at 931. Fortunately, no subsequent court has cited these propositions, and we respectfully suggest that *Constantine* would be decided differently today.

Here, Ms. Doyle alleged Defendants terminated her three months after her first complaint, which is sufficiently close in temporal proximity to demonstrate a causal nexus. *See Manoharan v. Columbia Univ.,* 842 F.2d 590, 593 (2d Cir. 1988) (holding that temporal proximity demonstrates a causal nexus where the adverse employment action follows the protected activity five months later). She alleged that Mr. Beck's treatment of her since her first complaint progressively worsened—including insulting her (Compl. ¶ 55)—until he terminated her employment. As such, Ms. Doyle has provided more evidence to demonstrate than only the

temporal proximity between her complaints and termination that her termination was the result of unlawful retaliation.

Accordingly, Ms. Doyle has pled a claim of retaliation.

## POINT V

### IN THE ALTERNATIVE, PLAINTIFF SEEKS LEAVE TO FILE A SECOND AMENDED COMPLAINT

If the Court grants Defendants' motion, Plaintiff seeks leave to file a Second Amended Complaint, which would include additional allegations of gender discrimination in support of her claims.

Under Rule 15, a party may amend its pleading only with the opposing party's written consent to the court's leave. FED. R. CIV. P. 15(a)(2). A court should freely give leave when justice so requires. FED. R. CIV. P. 15(a)(2). The purpose of Rule 15 "is to provide maximum opportunity for each claim to be decided upon its merits rather on procedural technicalities." *Siegal v. Converters Transp., Inc.,* 714 F.2d 213, 216 (2d Cir. 1983). The Second Circuit has held for nearly 75 years that Rule 15 was to be liberally construed, particularly where an amendment does not "allege a new cause of action but merely ... make[s] defective allegations more definite and precise." *Glint Factors, Inc. v. Schnapp,* 126 F.2d 207, 209 (2d Cir. 1942).

Accordingly, the Court should allow Plaintiff to file a Second Amended Complaint in the event that it grants Defendants' motion.

## CONCLUSION

As Plaintiff has plausibly alleged that Defendants took adverse action against her based on her gender and in retaliation for complaints of gender discrimination, and subjected her to a hostile work environment based on her gender, the Court must deny Defendants' motion.

Plaintiff reserves her right to seek fees and sanctions related to opposing the frivolous arguments

upon which Defendants base their motion to dismiss.


Dated: New York, New York
       July 21, 2016



                                        By:      s/ Walker G. Harman, Jr.
                                                Walker G. Harman, Jr. [WH-8044]
                                                Edgar M. Rivera [ER-1378]
                                                **THE HARMAN FIRM, LLP**
                                                220 Fifth Avenue, Suite 900
                                                New York, New York, 10001
                                                wharman@theharmanfirm.com
                                                erivera@theharmanfirm.com

                                                *Attorneys for Plaintiff*